# COURT OF APPEALS.

## MARTIN L. TOWNSEND, respondent agt. MORTIMER HENDRICKS and others, appellants.

Section 271, of the Code, (in reference to compulsory references,) must be con strued in connection with section 2 of article 1 of the constitution, *and is limited to actions on contract.*

The right of *trial by jury* in all other common law cases is preserved by the constitution.

Courts have no power compulsorily to refer an action which is not founded on contract, and which does not involve the examination of a long account.

The right of trial by jury as it existed under the constitution of 1777, has been continued and preserved to this day, and no statute subsequently passed can impair it.

The plaintiff by his complaint, in this case, demands judgment for the value of two railroad bonds, and for divers sums of money which he claims to have advanced to the defendants, with interest, basing his claim upon the allegations as to each of the items, that it was paid to the defendants on the faith of representations made by them of existing facts; that all these representations were false, and known by the defendants to be false, and made with intent to deceive and defraud the plaintiff; that on *discovering* the fraud the plaintiff *demanded the return* of his bonds, and the repayment of said sums of money, which the defendants refused:

*Held*, the action sounds in *tort* and is not referable; notwithstanding the fact that the counter-claim is limited to the alleged contract, and obligations of the parties, and the issue created by the counter-claim and reply would require the examination of a long account.

Where the action from its nature is not referable the answer cannot make it so.

Should the counter-claim even require examination, a reference could be ordered as to it after trial of the issues.

The fourth subdivsion of section eleven of the Code, as amended in 1870, *extends the right of appeal* to the court of appeals, *so as to include all interlocutory orders affecting substantial rights,* not involving any question of *discretion.* although such orders do not come within the classifications in subdivisions two and three.

*( This reverses the decision of the general term, in this case-reported,* 39 *How.* 475.)

*October Term,* 1870.

THIS was an appeal from an order of the general term of the superior court of the city of New York, affirming an order of reference.

The complaint alleged that the defendants were manu-

facturers and dealers in copper, in New York city; that in the month of January, 1869, the plaintiff applied to them to purchase for him 100,000 pounds Ingot copper at the market price; that on same day, they informed him that they had purchased the copper to be paid for, February 15th, 1869; that relying on. this representation, he delivered to them, as part payment, two bonds of the value of $2,000, accepted by them as cash, and that it was then agreed between them, that they should advance the balance of the purchase price, should take up the copper, put the same in store-house and keep it for him at his option, &c. That on the 21st of January, 1869, they undertook to purchase other 300,000lbs. for him, and on the same day represented that they had so purchased it, the price to become due and payable in March, 1869; that relying on this representation, he paid them $3,000 towards the purchase price, and they agreed to advance the balance of the purchase money, to take up the copper, put it in store and keep it for plaintiff at his option—holding the property in each case as security for their advances, &c.; that afterwards, from time to time, they represented to him that they had so advanced the balance of the purchase money, had paid for the copper, had taken it into their possession and then still held it for him; that upon these statements, the plaintiff advanced them various sums of money until he had advanced them in all $25,000; that these several representations were each false in fact, and were made with intent to deceive and defraud the plaintiff; that upon discovering the alleged fraud, he had demanded the re-payment of the $25,000, and that they had refused to return it. He, therefore, asked to recover the monies advanced, and interest. The answer denied all fraud or attempt at fraud, and among other things, alleged that the defendants had agreed to purchase and carry for the plaintiff 400,000lbs copper, on condition that he should pay them certain commissions, interest on the advances for purchase money,

Townsend agt. Hendricks.

store-house insurance, and like charges, besides maintaining in their hands a certain per centage on the market value of the copper. That he had failed to so pay them, or keep up said margin, and after proper offers and demands, they had sold the copper for his account, and that after crediting him with the avails, there was a balance due them of some $1,031 07, which sum they sought to recover as a counter-claim.

The plaintiff replied, and among other things, controverted the material allegations of the counter claim.

The special term (April 11th, 1870, MONELL, J.), on the plaintiff's motion, against the objection of the defendants, referred the whole issue to a referee to hear and determine the same. The defendants appealed to the general term, where the order was affirmed (June 30th, 1870; BARBOUR, FREEDMAN and SPENCER, JJ.) The opinions of the general term are reported in 39 *How.*, 475.

The plaintiff moved to dismiss the appeal as unauthorized. The appeal and motion were argued together.

CHARLES M. DA COSTA, *for appellant.*

I. This is an appealable order.

(*a.*) Section eleven of the Code, as amended in 1870, provides that " the court of appeals shall have exclusive jurisdiction to review, upon appeal, every actual determination hereafter made at a general term * * * by the superior court of the city of N. Y," *inter alia :*

" 4. *In an order* affecting a substantial right, *not involving any question of descretion* arising upon any interlocutory proceeding, or upon any question of practice in the action, including an order to strike out an answer, or any part of an answer, or any pleading in an action; *such appeals, whether now pending or hereafter to be brought,* may be heard as a motion, and noticed for hearing for any regular motion day of the court."

The history of the fourth sub-division of section eleven is as follows, viz. :

In 1865 a fourth sub-division to section eleven was for the first time enacted. It provided that an appeal should lie to the general term and to the court of appeals from any order made at special term of the supreme court alone, involving the constitutionality of any law of this state, and that such appeal, both at the general term and at the court of appeals, should be heard as a non-enumerated motion. In 1867 this sub-division was repealed, and in lieu thereof the following enacted, viz. :

" 4. An appeal from any order to the court of appeals, affecting a substantial right, arising upon any interlocutory proceeding, or upon any question of practice in the action, may be heard as a motion, and noticed for hearing for any regular motion day of the court,"

It was next amended in 1869, so as to read as follows, viz. :

" 4. An appeal from any order to the court of appeals, affecting a substantial right, arising upon any interlocutory proceeding, or upon any question of practice in the action, *including an order to strike out an answer, or any part of an answer, or any pleading in an action*, may be heard as a motion, and noticed for hearing for any regular motion day of the court."

The sub-division enacted in 1867, and as amended in 1869, has been judicially construed by this court.

In *Tabor* agt. *Gardner* (41 *N. Y.*, 232 ; *decided at September Term*, 1869), the court, per WOODRUFF, J., said : " The last clause of sub-division four of that section has been frequently misunderstood, but has been again and again held by this court to regulate the hearing of appeals from orders, of which this court had jurisdiction, by power of the preceding sub-divisions and clauses of the section, and not to extend that jurisdiction to other orders not previously named."

With the decision of this court before them, the legisla-

ture in 1870, amended the said subdivision, so as to read as above set forth, with the intention, evidently, of conferring on this court jurisdiction of appeals from orders as therein specified, and which jurisdiction, this court, on the wording of the sub-division enacted in 1867, and as amended in 1869, had held not to be conferred.

Such intention is clearly evinced from,

1. The history of the said sub-division and the rulings thereon by this court.

2. From the plain reading of the entire section as now amended.

3. From the phraseology used, to wit: " In an order, &c.," following, as it does the phraseology of the other preceding subdivisions of the section, admittedly conferring jurisdiction. Thus, the first sub-division commences, " In a judgment, &c.," the second, "In an order, &c.," the third, "In a final order, &c."

4. If such be not the construction to be given to the amendment of 1870—*i. e.*, if it does not *confer jurisdiction*, then it follows logically that the amendment is meaningless and useless, for the *regulation* of appeals from orders, of which this court had judisdiction by power of the preceding sub-divisions and clauses of the section, had been held to be already conferred by the sub-division as enacted in 1867, and amended in 1869.

(*b.*) The order appealed from both,

1. Affects a substantial right, not involving a question of discretion, in an interlocutory proceeding, in that it deprives the appellants of their constitutional right of trial jury in a case in which it is conceived, the law of the land does not authorize a compulsory reference.

An appeal from an order of reference, where the reference is not authorized by law, is an appeal from an order involving a substantial right. ( *Cram* agt. *Bradford*, 4 *Abb.*, 193; *Batchelor* agt. *Albany City Fire Ins. Co.*, 6 *N. Y.*, 240; *Turner* agt. *Taylor*, 2 *Daly*, 278.)

2. And also arises upon a question of practice in the action.

If the above views be correct, the court has jurisdiction of this appeal.

II. The cause of action alleged in the complaint is not one which the court can compulsorily refer. Its gravamen is fraud, the plaintiff seeking to recover, as damages, the several amounts of money which he alleges he was induced to part with and pay to the defendants, by reason of their alleged false and fraudulent statements and representations. The answer, while admitting the receipt by the defendants of the respective amounts of moneys alleged by the plaintiff to have been paid, denies each and every of the allegations of the complaint, charging or purporting to charge the defendants with any fraud, or attempt at fraud; and then as a further defense, sets up the true and exact statement of the transactions had between the parties. It is clear, therefore, that such an issue is not one which it is in the power of the court compulsorily to refer. (*See opinion of* MONELL, *J., at Special Term ; Dissenting opinion of* SPENCER, *J., at General Term,* 39 *How.,* 475; *Levinger* agt. *Hendricks, infra.*)

The court, at general term, held, in substance, that, under the allegations of the complaint, *indebitatus assumpsit* for money had and received would lie; and that the allegations of fraud might be regarded as pleaded as matter of aggravation.

To that we answer,

1. The proposition begs the question, for it is *the allegations* of fraud which raise the implied promise, and until the issue of fraud is determined, no promise arises. Fraud is, therefore, the issue underlying the case, and such an issue cannot be compulsorily referred.

2. Matters of aggravation have no function in a declaration of *indebitatus assumpsit* for money had and received.

In declarations in actions *ex delicto* only, the " *alia enormia*" clause is found and used.

Townsend agt. Hendricks.

Matters of aggravation is matter which only tends to increase the amount of damages, and does not concern the right of action itself. *(Stephens on Pleadings, p.* 243; *Gould on Pleadings, Chap. III. Section* 10.)

3. The case of *Byxbie* agt. *Wood,* (24 *N. Y.,* 610,) cited by the court below, turned more especially on the wording of the assignment therein referred to, *(pp.* 609 *and* 611;) besides it has no applicability to the question now under consideration; for the issue of fraud, which is the under-lying one, and which, when established, raises the implied promise, has first to be tried before the proper constitutional tribunal, viz.: a jury.

III. It is true, that the defendant's answer also sets up a counter-claim, which is put at issue by the reply; and the court below held,

( *a.*) That such an issue required the examination of a.long account.

( *b.*) And that it was, therefore, within the power of the court to compulsorily refer *all* the issues in the action. ( *See opinions,* 39 *How.,* supra.)

It is respectfully, submitted that in this the learned court below erred, for the reasons stated in the following points, viz.:

IV. No issue involving any accounting is framed by the answer and reply, for,

*( a.*) The plaintiff, in his complaint, avers, that during the pendency of the transaction, the defendants delivered to the plaintiff several statements of account which are alleged to be untrue, false and fraudulent, and made with intent to deceive the plaintiff, and to induce him to pay the moneys he did to the defendants. The answer avers that the several sratements of accounts rendered, were just and true, and *accepted* by the plaintiff. The reply avers, that the statement of accounts referred to and mentioned in the answer, are the identical statements of account mentioned in the complaint, and that they are made up of false fictitious, and usurious charges.

( *b.* ) The accounts thus rendered are either :

1. Accounts stated, and therefore conclusive. ( *Lock-wood* agt. *Thorn,* 1 *Kernan,* 170 ; *Id.,* 18 *N. Y.,* 285 ; *Smith* agt. *Marvin,* 27 *N. Y.,* 137.)

(Which latter case disposes effectually of the plea of usury, contained in the plaintiff's reply) ; or

2. Are fraudulent, and part and parcel of the alleged scheme of fraud, which, if the plaintiff succeeds in establishing his alleged cause of action, will fall by themselves.

( *c.* ) Should it be suggested that the counter-claim of the defendants, put at issue by the reply, involves an accounting as to the balance claimed, it will be sufficient to answer :

1. That it does not involve a long accounting.

2. That the court has no power to determine, or to presume, as the court below did, whether or not, if the plaintiff is defeated in his alleged cause of action, the defendants will *then* proceed with, or abandon their counter-claim. It is an affirmative cause of action on their part, and its prosecution or abandonment is entirely within their own control and option.

V. But, even if the issue raised by the defendants' counter-claim involves the examination of a long account, no accounting can by any possibility be necessary, until the plaintiff has either abandoned or been defeated in his alleged cause of action ; and *until then,* the court has no power to order a compulsory reference *(Draper* agt. *Day,* 11 *How.,* 439 ; *McCulloch* agt. *Brodie,* 13 *How.,* 347 ; *Sharp* agt. *The Mayor,* 14 *How.,* 213 ; *Affirmed on appeal,* 31 *Barb.,* 578 ; *Cameron* agt. *Freeman,* 18 *How.,* 353 ; *Ross* agt. *The Mayor,* 2 *Abb. N. S.,* 266 ; *Goodyear* agt. *Brooks* 4 *Rob.,* 682 ; *Id.,* 2 *Abb. N. S.,* 246 ; *Bushnell* agt. *Eastman,* 2 *Abb· N. S.,* 411.)

To the same effect is the unreported case of *Levinger* agt. *Hendricks, et al.,* decided in the New York Common Pleas, April 20, 1870. In that case, a motion was made for a reference upon similar papers; the issues involved being

identical with those of the case at bar; and the plaintiff in this suit being the plaintiff's attorney in the case referred to. The opinion of Mr. Justice MONELL was before the court; but nevertheless the motion was denied, and the following opinion rendered:

VAN BRUNT, J.—In this case I do not see how a compulsory reference can be ordered. The issue which has first to be tried is, did the defendants represent to the plaintiff that they had bought certain copper for his account, and did the plaintiff, relying upon these representations, make the payments alleged in the complaint, and were these representations false. There is no dispute as to amounts received by the defendants from the plaintiff, and if the allegations in the complaint are true, the jury can bring in a verdict without taking into consideration any account. But if they find that the copper was actually purchased by the defendants as stated and represented by them, then it is argued, that under their answer, the examination of a long account will be involved.

After the jury have so found, it will be ample time then to refer this account. The defendants have the right to claim that this issue of fraudulent representations shall be first tried by a jury.

The case of *Turner* agt. *Taylor*, which will appear in 2 *Daly*, 278, expressly decides that a compulsory reference will not be ordered in such a case.

Motion must be denied with ten dollars costs to abide event.

VI. If the 271st section of the Code be construed to authorize the compulsory reference of *all the issues* in *all* cases, in which any one of the issues does, or by possibility may involve the examination of a long account, then it is submitted, that such section is, *quoad hoc*, unconstitutional and void.

(*a.*) Section two of article one of the constitution of 1846, provides: "That the trial by jury, in all cases in which it has

been heretofore used, shall remain inviolate for ever." The same language is found in the counstitution of 1822 (§ 2, *art.* 7), and in the constitution of 1777 (§ 41).

(*b.*) The ancient action of account was heard by auditors. It was rarely resorted to; and the court pointedly discountenanced its revival. (*McMurray* agt. *Rawson,* 3 *Hill,* 59.)

Before the year 1768, all common law actions, except the one above referred to, were tried before a jury. In that year the colonial legislature passed an act, entitled "an act for the better determination of personal actions depending upon accounts." (*Van Schaick's Laws of New York, vol.* 2, 517.)

It commenced as follows:

"Whereas, instead of the ancient action of account, suits are of late, for the sake of holding to bail, and to avoid the wager of law, frequently brought in assumpsit, whereby the business of unraveling long and intricate accounts, most proper for the deliberate examination of auditors, is now cast upon jurors, who, at the bar, are more disadvantageously circumstanced for such services; and this burden upon jurors is greatly increased since the laws made for permitting discounts in support of a plea of payment; so that by the change of the law and the practice above mentioned, *the suits of merchants and others upon long accounts* are exposed to erroneous decisions, and jurors perplexed and rendered more liable to attaints; and by the vast time necessarily consumed in such trials, other causes are delayed and the general course of justice greatly obstructed. *Be it therefore enacted,* &c., that whenever it shall appear probable in any cause depending in the supreme court of judicature of this colony (other than such as shall be brought by or against executors or administrators), that the trial of the same will require the examination of a long account, either on one side or the other, the said court is hereby authorized, with or without the consent of parties, to refer such cause by rule, to be made at discretion, to referees," &c.

This act expired, by its own limitation, on January 1st' 1771; but it was revived and re-enacted, "the same having been found very useful and necessary," by the act of February 16th, 1771 (*Id.*, 607), and was to continue in force until February 1st, 1780.

The powers thus conferred on the supreme court of judicature were by the act of February 26th, 1772 (*Id.*, 642), extended to the courts of common pleas, and to the mayor's court of the cities of New York and Albany. Thus at the time of the adoption of the constitution of 1777, all common law actions, save the ancient action of account, and "*the suits of merchants and others upon long accounts,*" were tried by a jury, and the right to such jury trial was, by the provision of said constitution, to remain "*inviolate for ever.*"

(*c.*) The colonial act above referred to (which by the 35th section of the constitution of 1777, had become the law of the state), expired by its own limitation in 1780, from which time until 1788, no law existed in this state authorizing references. In 1788, the legislature passed a law on the subject; the second section of the act of February 27th, 1788 (*Jones and Varick's Laws of New York, vol.* 2, 269), being a virtual and almost verbal re-enactment of the colonial law above referred to, differing only in that the power to refer was extended "to any court of record," and also to causes where executors or administrators were parties.

Next in order of time came the act of March 30th, 1801 (*Kent's and Radcliffe's Laws of New York, vol.* 1, 346), the second section of which was a re-enactment (with less verbiage) of the second section of the act of 1788. Then followed the act of April 5th, 1813 (1 *R. L.*, 515), the second section of which was but a verbal re-enactment of the law of 1801.

The act of 1813, was succeeded by the provisions of the Revised Statutes, (2 *R. S.*, 384, 1*st ed.*,) and which latter were amended by chapter 163 of the laws of 145.

Such, in brief, is the history of the legislation prior to the constitution of 1846.

( *d.* ) 1. Although none of the statutes, either colonial or state, enacted prior to the act of 1845, say anything about the form of action, yet the courts had always held that compulsory references could only be ordered in cases where accounts, in the common acceptation of that term, existed and required examination , that is to say, only in actions of *assumpsit,* or debt on simple contract, where the accounts and dealings between the parties were directly in issue. ( *Silmser* agt. *Redfield,* 19 *Wend.,* 22, *and cases there cited ; Dederick* agt. *Richley,* 19 *Wend.,* 108, *and cases there cited ; Van Rensselaer* agt. *Jewett,* 6 *Hill,* 373.)

And the attempt to extend the statute to actions of covenant, where long accounts were involved, met with no favor. ( *Thomas* agt. *Real,* 6 *Wend.,* 503; *Bloore* agt. *Potter,* 9 *Wend.,* 480.)

2. In view of the constitutional and statutory legislation above referred to, no other construction could, legally, be given to the respective statutes.  Since 1777, the right of trial by jury in all common law actions, save the ancient action of account and " the suits of merchants and others upon long accounts," became " *inviolate for ever.*"

3. The act of 1845, which, by its terms, limited compulsorily references to " a cause founded upon contract, &c.," was,

( *a.* ) But a legislative declaration of the law, as theretofore, expounded and understood by the courts ;

( *b.* ) Or it extended compulsory references to all causes " founded upon contract, &c," and then, in view of the principles contained in the foregoing points, it may well be doubted whether such act was constitutional.  But this need not now be considered, for,

( *e.* ) Prior to the adoption of the constitution of 1846, no court ever had, or ever claimed, the right to compulsorily refer actions of tort, or sounding in tort, even

Townsend agt. Hendricks.

though they might involve th examination of long accounts.

1. The constitutional provisions above alluded to, not merely prevented it, but

2. Also solemn anjudications on the point. In *Silmser* agt. *Redfield*, (19 *Wend.*, 21.)

The court, per NELSON, Ch. J., said: "Were we to give to the statute the construction contended for by the counsel for the plaintiff, and adjudge a complicated case of *tort*, involving the examination of the value of numerous articles of property, or other items of damage, as an account within it, we should establish an entire new ground upon which to sustain motions to refer, which has not heretofore occurred to the profession, though the statute has been in operation some fifty years."

In *Dederick* agt. *Richley*, (19 *Wend.*, 108,) (where all the authorities on subject are collected,) BRONSON, J., said :

"I think *it is a settled question*, that actions *for tort* are *not referable* under the statute, although they may involve the examination of long accounts."

And in *Beardsley* agt. *Dygert*, (3 *Denio*, 380,) the court held that, "it is settled that an action of *tort* cannot be referred. * * *"

[Note.—The remarks of COWEN, J., in *Lee* agt. *Tillotson*, (24 *Wend.*, 338,) are mere *obiter dicta*, and directly in conflict with all the solemn adjudications on the point.]

VII. If the foregoing views be correct, the construction given to the 271st section of the Code, by the court below, is irroneous.

1. The section must be construed with reference to the constitution and pre-existing laws, indicated in the foregoing points.

2. Again, it can hardly be supposed, that the legislature meant by the said section to violate the article of the constitution referred to, the more especially as the preceding, 253d section of the Code, carefully guards the constitutional

right of trial by jury. (*See Bradley* agt. *Aldrich*, 40 *N Y.*, 504–512.)

3. The case of *Sheldon* agt. *Wood*, (3 *Sandf.* 739,) relied on in the opinion of the court below, was, it is respectfully submitted, improperly decided. It is in conflict with the constitutional provision, and unsupported by reason or authority.

VIII. The order appealed from should be reversed with costs.

JOHN L. HILL, *for respondent.*

I. The appeal should be dismissed. The amendment of 1869, did not extend jurisdiction, (*Tabor* agt. *Gardner*, 41 *N. Y.*, 232,) and there is no such radical change as necessarily to require the inference of an intention to enlarge jurisdiction.

II. Fraud is not the gravamen of this action. The complaint sets forth *a series of facts.* If the allegations are true the defendants simply obtained money from the plaintiff to which they were not entitled, and which they have no right to retain. This creates a *debt* and gives him the right to sue upon an *implied obligation* to re-pay. (*Bixbie* agt. *Wood*, 24 *N. Y.*, 610.) The allegations of fraud in this case were necessary in order to justify the implication of such a promise—hence, should not be considered as distinctive of the character of the action.

III. There is no constitutional objection to this reference.

( *a.* ) The *language of the Code* does not limit to actions on contract. ( *b.* ) The constitution, (*section* 2 *of art.* 1,) defines *legislative powers* in respect to trials by jury. The legislature had "*heretofore used*" (1846) its power in respect to trial by jury, by the passage of an act broad enough to authorize a reference of any action which involved the examination of a long account. (*Revised Laws*, 1813 *Ch.*     *section*     ; 1 *Dunlap's, Pr. ed. of* 1821

*p.* 538 ; *Lee* agt. *Tillotson,* 24 *Wend.,* 338.)   This previous use of the legislative power, whether authorized by the constitution existing at that time or not, was afterwards adopted, and made a part of the organic law in 1846.

IV. The liability of defendants to arrest or to execution against the body is no criterion to determine the gravamen of this action.   They might be liable to both in an action *on contract,* if guilty " of fraud *in contracting the debt.*   *   * for which the action is brought," &c., *(Code, section* 179.)

RAPALLO, J.—The respondent moved to dismiss the appeal on the ground that the order is not appealable.   The motion to dismiss was argued in conjunction with the appeal, and should be first disposed of.

It is conceded that such an order could not be reviewed on appeal to this court before judgment, under the provisions of section 11, of the Code, as they stood prior to the amendment of 1870.

That section originally enacted, conferred upon this court exclusive jurisdiction to review upon appeal every actual determination of certain courts.

(1.) In a judgment, and on such appeal to review certain intermediate orders.

(2.) In a final order in a special proceeding or on a summary application after judgment.

Amendments to this section were made from time to time, viz.: in 1849, 1851, 1852, 1857, 1862, 1865, 1866, 1867, 1869, 1870.   In 1851, two new subdivisions were added, viz., in an order which in effect determines the action, and, " 4," in an order granting a new trial, &c.

In 1852, the subdivisions were reduced to three ; and 1867, a new subdivision " 4" was added, declaring in substance that whenever the decision of any motion in the supreme court involved the constitutionality of a law, an appeal should lie.   The concluding paragraph of this new subdivision is as follows : " And such appeal, at the

general term, and at the court of appeals shall be heard as a non enumerated motion."

In 1867, a further subdivision was added also numbered "4," in the following words : "An appeal from any order to the court of appeals, affecting a substantial right, arising upon any interlocutory proceeding, or upon any question of practice in the action, may be heard as a motion, and noticed for hearing for any regular motion day of the court."

This subdivision, (No. 4,) although not in terms declaring that appeals should be allowed from orders arising upon interlocutory proceedings, or upon questions of practice, yet recognized such orders as the subjects of appeals, and was to a considerable extent understood by the profession, as extending by implication the right of appeal, so as to embrace all such orders without regard to the limitations in subdivisions 2 and 3, and appeals based on such understanding were brought into this court.

It was held, however, in those cases, that by the true construction of the subdivision as amended, the right of appeal was not extended, and that its only effect was to regulate the manner of hearing such of the appeals theretofore authorized as should come within the specifications of the new subdivision.

This decision was necessarily based upon the frame of the subdivision which varied materially from that of the preceding subdivisions in which the orders subject to review were enumerated, and purported simply to prescribe how certain appeals might be heard ; and also upon the consideration that no extension of the right of appeal must necessarily be implied, because the order from which appeals were already authorized, or the rights affected by such orders, might arise on interlocutory proceedings or questions of practice, and therefore, full effect could be given to the subdivision, without any such implication.

In 1869, subdivision 2 of section 11, was amended by

adding to the enumeration of appealable orders, those striking out answers or pleadings, and a further amendment was made to subdivision 4, by adding to the class of appeals which might be heard as motions, appeals from orders to strike out answers or pleadings.

After this amendment, this question was again raised in this court, which adhered to its former decision. *(Tabor* agt. *Gardner,* 41 *N. Y.*, 232.)

Subsequent to this decision, September Term, 1869, viz.: at the session of 1870, subdivision four was again amended and now reads as follows:

" 4. In an order affecting a substantial right, not involving any question of discretion, arising upon any interlocutory proceeding, or upon any question of practice in the action, including an order to strike out an answer, or any part of an answer, or any pleading in an action, such appeals whether now pending or hereafter to be brought, may be heard as a motion and noticed for hearing for any regular motion day of the court."

It is to be observed that by this amendment the frame of the subdivision is changed so as to make it conform to the frame of the subdivisions immediately preceding it, which enumerate the cases in which appeals will lie, and thus read as a continuation of such enumeration instead of being, as it was, before the amendment, a distinct and independent provision. The first clause of section eleven, declares that this court shall have exclusive jurisdiction to review determinations of certain courts, and then the subdivisions enumerate 'what determinations," viz.: " *First.* In a judgment. *Second.* In an order which prevents a judgment. *Third.* In an order made after judgment. The words: " In a judgment," " In an order," in all the subdivisions, clearly relate to words " actual determination," which precedes them, and not to any thing which follows; and now by the amendment in question, subdivision four, is made to begin with the same formula. "In an order"

not involving any questions of discretion, &c.   Thus connecting it precisely in the same manner in which the preceding subdivions are connected with the clause which confers jurisdiction.

. This is a marked and significant change in the frame of the subdivision, totally useless for any purpose other than that of thus connecting it with the first clause of the section, and causing it to read as a further head of jurisdiction. If the intention of its author was that the former interpretation of the subdivision should be retained, such intention so far from being manifested, is effectually obscured by the change.

It is, also, to be observed, that a qualification is introduced by the amendment into subdivision four, which is not to be found in either of the other subdivisions.   They all require that a substantial right be involved, but subdivision four, as amended, requires in addition, that no question of discretion be involved.

This additional qualification may well have been inserted for greater caution in a section intended to extend the right of appeal to a new class of orders in respect to which, rules had not been established by adjudication, they never before having been appealable ; but if, as is claimed, the only effect of the amendment is to further regulate the mode of hearing appeals already authorized, then the only change effected by the amendment is that which results from the introduction of the words " not involving any question of discretion."   For it was already provided, that all the appeals which, as the respondent claims, are referred to in the subdivision, should be heard as motions.   If, therefore, the respondents construction be correct, the only effect of the amendment was to distinguish as to the mode of hearing between orders depending upon discretion, and those not involving discretion, and to provide, that appeals from orders of the latter class only, might continue to be heard as motions.   An amendment which could not be necessary or

Townsend agt. Hendricks.

effectual for any purpose, except upon the assumption that but for such amendment, orders involving discretion, could be heard as motions, and leaving it clearly to be implied that when questions of discretion were to be reviewed, the appeal must be heard in its order on the calendar.

We cannot presume such to have been the understanding, or intention of the legislature. If it had been the insertion of the word " not involving any question of discretion," without any change in the frame of the subdivision, would have rendered the construction claimed by the respondent much less difficult.

The changes in the frame and language of the subdivision, are too radical and significant to leave any doubt as to the intention of the legislature to extend the right of appeal to all interlocutory orders in actions affecting substantial rights, and not within the discretion of the court below, though not coming within the classification in subdivisions 2 and 3. Criticism may be made upon some inaccuracy of language, and punctuation. The insertion of a colon or period, or of the word " and," before the word " such appeals" would remove the principal ambiguity claimed to exist. But read in connection with the residue of the section and in the light of the previous enactments and the adjudications thereon, the intent of the amendment is too plain to be frustrated by mere minor defects in punctuation or phraseology.

The effect of the order appealed from, was to deprive the defendants of a trial by jury. If they had an absolute right to such a trial, and the court below had not the legal right to deprive them of it, and substitute a trial by a referee, then the order affects a substantial right and did not involve discretion. If there was no power to make the order, no discretion could be exercised.

The question whether the order is appealable, as well as the result of the appeal, therefore, depend upon this question of power.

The Code, section 271, authorizes the reference of any action, the trial of which shall involve the examination of a long account on either side. This provision is subject, however to the limitation imposed by section 2 of article 1, of the constitution of the state of New York, which declares " that the trial by jury in all cases, in. which it has been heretofore used, shall remain inviolate forever." The same provision is contained in the constitution of 1822, (Sec. 2 art. 7,) and in the constitution of 1777, (§ 41.)

The right of trial by jury as it existed in 1771, has heretofore been continued and preserved to this day, and no statute, subsequently passed can impair it.

All common law actions have been triable by jury, in this state, as far back as its jurisprudence extends, subject only to the exceptions of actions on contract, involving the examination of long accounts, which actions might be referred. This exception existed at the time of the adoption of the constitution of 1777, and 1822, (See act of the colonial legislature of 1768 ; Van Schaick's Laws of New York, vol. 2 p. 517; act of 1771, Id. p. 607; act of 1772, Id. p. 642; act of 1788, Jones & Varicks Laws, vol. 2 p. 269; act of 1801, Kent & Radcliffs Laws, vol. 1. p. 346 ; 1 R. L., 1813, p. 515.)

It has been settled by repeated decisions of the courts of this state that under those statutes, compulsory references could only be ordered in actions on contract. (Dedrick agt. Riehly, 19 Wend., 108; Green agt. Patchin, 13 Wend., 294; Yates agt. Russell, 17 J. R., 461); and, that the right of trial by jury, in all other common law actions, was preserved.

By the Revised Statutes (2 R. S., 384, 1st ed.), and the act of 1845 (ch. 163), the power to order a reference, without consent appearing, was expressly confined to causes founded on contract· involving the examination of long accounts. Thus at the time of the adoption of the constitution of 1846, the right of trial by jury in all other common law actions,

Townsend agt. Hendricks.

was, and had been from the time of the foundation of the state, unimpaired, and it was by the constitution declared to be inviolate forever.

The present action is clearly a common law action, and it follows that unless it can be held to be one founded on contract, the power to refer it compulsorily, does not exist even though a literal construction of section 271 of the Code, might seem to authorize such a reference.

The plaintiff, by his complaint, demands judgment for the value of two railroad bonds, and for divers sums of money which he claims to have advanced to the defendants, with interest, basing his claim upon the allegations as to each of the items that it was paid to the defendants on the faith of representations made by them of existing facts; that all these representations were false, and known by the defendants to be false, and made with intent to deceive and defraud the plaintiff. That on discovering the fraud the plaintiff demanded the return of his bonds, and the re-payment of said sums of money, but that the defendants refused to comply with such demands.

It is true that there are various allegations throughout the complaint of promises and undertakings made by the defendants, but these allegations are set out merely by way of inducement, and as showing the occasion and materiality of the representations. There is not throughout the whole complaint, an allegation that any one of the items claimed to be recovered, was paid in consideration of such promises, nor is there any demand for damages for their non-performance. On the contrary, the contract, if any appears by the complaint, is disaffirmed by the demand of the return of the bonds and money fraudulently obtained.

The action must, therefore, be held to be one founded on tort, and not referable against the will of either party. It has been contended that upon the facts alleged, some recovery might be had on the contracts referred to in the complaint. But even if this were so, it is clear that if

referred and the facts alleged were found by the referee to be true, a judgment based upon the tort could properly be rendered, and that to enforce such a judgment execution against the person could issue; and indeed the facts alleged would be sufficient to sustain a criminal prosecution.

It is further contended that the defendants have by interposing a counter-claim consisting of a long account, rendered the examination of such account necessary. It does not follow that the action can be referred for that reason. If the action is from its nature not referable, the answer cannot make it so. Should the counter-claim ever require examination, a reference can be ordered as to it after trial of the issues.

The motion to dismiss the appeal should be denied, and the order appealed from reversed with costs.