HARRY A. FURMAN and Another, as Receivers of GENERAL LAUNDRY MACHINERY CORPORATION, Plaintiffs, *v.* AMERICAN LAUNDRY MACHINERY COMPANY, Defendant.

Supreme Court, Rensselaer County, December 28, 1931.

*Dugan & Bookstein,* for the plaintiffs.

*Murphy, Aldrich & Guy,* for the defendant.

McNAMEE, J.    The plaintiffs, as receivers of the General Laundry Machinery Corporation, have brought an action against the defendant on a contract under seal, made by the insolvent corporation with the defendant.    In the first cause of action the plaintiffs allege the contract, which provides for the sale and delivery to the defendant of the business, good will, equipment and most of the other assets of the insolvent corporation; that the insolvent corporation fully performed; that a large sum of money still remains due from the defendant; that the defendant has broken the contract; and that the plaintiffs have suffered not only general damages, but a special consequential damage.    And in the second cause of action plaintiffs allege a sale and delivery of personal property to the defendant, the agreed price and reasonable value thereof; that a large balance remains unpaid, viz., the same amount stated in the first cause of action as damages.    It is evident that the first cause of action is based on the written contract, and damages are sought for its breach; and that the second cause of action is based on the sale and delivery of the same property, and that recovery is sought of the agreed price or of the *quantum valebat.*

The defendant admits the contract in writing, the payment by the defendant of a large sum thereunder, a demand by plaintiffs for the balance, and then interposes a general denial as to the balance of the complaint.

In their affidavit, as well as in their complaint, the plaintiffs allege that this action is one brought for a breach of the contract

by the defendant, and for damages; and the defendant puts in issue its breach, denies that anything is owing by the defendant to the plaintiffs, and alleges the defense that the insolvent corporation violated the contract, and thus relieved the defendant.

The plaintiffs' theory of proof is that in order to establish their cause of action, it will be necessary to prove the delivery of many items of property, prove many values, and that many book entries will be necessarily resorted to for this purpose, and that many documents will of necessity be examined; that these items of proof will aggregate many thousands, will consume a long period of time, and that, therefore, a long account is involved, and thus the case is one that may be compulsorily referred.

The defendant is insisting that a long account is not involved, and that a reference is not warranted. Thus the motion not only involves a claim for damages of more than $900,000, but also the constitutional right to a trial by jury.

For the purpose of this motion it is evident that the plaintiffs can recover on only one of the causes of action alleged, and that the first, as there appears no abandonment of the contract in writing, nor an inability to prove it. (*Ladue* v. *Seymour*, 24 Wend. 60, 63; *Smith* v. *Smith*, 1 Sandf. 206, 208; *Sherman* v. *N. Y. C. R. R. Co.*, 22 Barb. 239, 243.)

The Constitution provides that " the trial by jury in all cases in which it has been *heretofore used* shall remain inviolate forever." (Art. 1, § 2.) The Civil Practice Act provides that the court upon its own motion, or upon the application of either party, may direct a reference " where the trial will require the examination of a long account on either side." (§ 466.) Thus a reference may not be had here unless a long account is involved, or unless this is such a case as was not tried by jury before the Constitution. The *statute* appears to give only one ground for a compulsory reference, and that the examination of a long account.

While the decisions are very numerous which refer to " a long account," it is not a short nor easy task to determine therefrom the precise legal import of that expression; and it is not readily evident from the modern decisions what were the precise classes of cases, other than those comprehending a long account, which were not tried by juries before the Constitution, and which thus have been outside the rule of inviolability since that time.

The language on this subject in our present Constitution is the same as that of the Constitutions of 1777, 1822 and 1846. And the Colonial statute passed in 1768 was in substantially the same language as the Civil Practice Act of to-day. (2 Van Schaick Laws of New York, 517.) And the preamble of the Colonial

statute recites " that instead of the ancient action of account, suits are * * * frequently brought in assumpsit, whereby * * * long and intricate accounts, most proper for the deliberate examination of auditors, is [are] now cast upon jurors * * *; so that * * * the suits of merchants and others, upon long accounts, are exposed to erroneous decisions, * * *, other causes are delayed, and the general course of justice greatly obstructed." And after thus referring to the suits of *merchants* and *others* (suits of similar character) upon long accounts, the Colonial statute enacted that a reference might be ordered in a case where " the trial of the same will require the examination of a long account." It was the accounts of merchants and like accounts, which themselves constituted the causes of action, that were in the mind of the Colonial Legislature. It seems that the practice at *common law* then was to order a reference to auditors if the account itself, that is, the independent charges and credits listed by one who seeks to recover thereon, was the evidence of plaintiff's claim, as distinguished from a formal contract of the parties, providing perhaps for rights and remedies apart from and in addition to a mere sale and delivery of items of merchandise or other personal property.

In addition to the statutory reference at common law before the Constitution, there appears to have been " the ancient action of account," referred to in the Colonial statute above mentioned, in which the account was referred by the court to auditors. This " ancient " action at common law would lie to establish an account against guardians in socage, bailiffs or receivers in possession, or if brought by one merchant against another, and later, if brought by one joint tenant or tenant in common against another such tenant who had received while in possession more than his share of the produce or proceeds of the land. This appears to illustrate generally the classes of cases which were triable without a jury prior to 1777. But this action had practically fallen into disuse, if indeed it had not been abandoned by the courts. (*McMurray* v. *Rawson*, 3 Hill, 59.) Thus in our modern litigation and practice in common-law actions it appears at least doubtful whether there is any warrant for a compulsory reference, except the provisions of the Civil Practice Act.

And it has been said with authority that a compulsory reference could be ordered only in cases where accounts, in the common acceptation of that term, existed and required examination, that is to say, only in actions of assumpsit, or simple contract, where the accounts and dealings between the parties were directly in issue. (*Silmser* v. *Redfield*, 19 Wend. 21; *Dederick* v. *Richley*, Id. 108;

*Van Rensselaer* v. *Jewett,* 6 Hill, 373.) And the courts have declined to include formal *contracts* of sale within the classes of cases that might be compulsorily referred, even though long accounts were involved. (*Thomas* v. *Reab,* 6 Wend. 503; *Bloore* v. *Potter,* 9 id. 480.) And the Court of Appeals has said that since 1777 the right of trial by jury in all common-law actions has been inviolate, except in the ancient action of account, and those of merchants and others upon long account. (*Townsend* v. *Hendricks,* 40 How. Pr. 143, 154.) The *Townsend* case further makes clear that a tort action may not be referred without regard to the number of items whose value may be in question, or the number of items of damage to be proved. It is the wrong that is the gravamen of such an action. No one would contend that an action on a fire insurance policy is an action in assumpsit, or may be likened to a merchant's account, and, therefore, could be referred, even though it might involve a great number of items of loss; yet the proof of loss is an essential part of plaintiff's cause. A builder who sues to recover damages for a breach of contract to build, even though of necessity many items and elements enter into his proof, is not such a case as will be referred. (*Untermyer* v. *Beinhauer,* 105 N. Y. 521, 524.)

The case before the court now, regardless of the number of items involved, is not one of assumpsit, nor one on simple contract, nor does it resemble the suit of a merchant, nor is it one of similar character upon a long account. It is an action on a contract in writing and under seal, the breach of which is not only in issue, but its breach constitutes the gravamen both of the cause of action and of the defense as well. The action by its nature was not compulsorily triable by the court nor referable before the Constitution; nor is it triable by the court nor referable under the statute now, except upon consent of the parties.

The motion for reference must be denied.