# CHARLESTOWN.

MOORE, PRESIDENT, *v.* SCHOPPERT.

Submitted September 6, 1883—Decided October 2, 1883.

1. An *ex parte* order of the county court of Jefferson county taking charge of so much of the Cross-Roads and Summit Point turnpike as lies in said county, made without notice, would not, even if it was so intended, transfer to said county or divest any rights or title of the corporation owning said turnpike; although some of the private stockholders of said corporation subsequently appeared in said court and asked it to rescind said order, which it refused to do. The only effect of said order was to declare the interest of the State in said corporation to be vested in said county and to express its willingness to take charge of the same. (p. 287.)

2. The effect of the legislation of the re-organized government of Virginia and of this State is to transfer to and vest in the different counties of this State the stock or interest of the State of Virginia and of this State in the roads of incorporated turnpike companies and to confer upon the respective county courts of this State the management and control of the stock or interest thus transferred, and also to give to said county courts control of any such roads or parts thereof lying in any county as such county may by agreement, condemnation or otherwise acquire, or of such roads as may have been entirely abandoned by any such corporation or the private stockholders thereof; but it does not give to to the county courts jurisdiction and control over any turnpike road belonging to any incorporated company, which is or shall be managing and controlling its road according to its charter, further than the right to control and represent as a stockholder the stock or interest acquired by the county from the State in such company, and to regulate the tolls of such company. (p. 289.)

3. The charter of a corporation does not expire by reason of acts of omission or commission on the part of the company, even where they constitute a sufficient ground for declaring a forfeiture ; but the franchises continue in full force until a forfeiture is claimed by the State granting them ; and this can be done only in a proper legal proceeding by which the cause of forfeiture is ascertained and a dissolution adjudged. (p. 290.)

4. In a court of law, the property and rights of an incorporated company belong to the united association, acting in the corporate name, and not to the stockholders. The latter, however, are the real owners ; and a technical trust thus arises in their favor which will be protected and enforced in a court of equity. (p. 290.)

The facts of the case appear in the opinion of the Court.

*McDonald & Beckwith* for plaintiffs in error.

*George Baylor* for defendant in error.

SNYDER, JUDGE :

Action of ejectment brought by A. Moore, president of the Cross-Roads and Summit Point Turnpike Company against Jacob Schoppert in the circuit court of Jefferson county to recover the possession of a lot of one third acre of land and a toll-house thereon in said county. The declaration was filed at the September rules, 1878, the defendant appeared and entered the plea of not guilty on which issue was joined,

a trial was had by jury, a verdict found for the defendant and judgment rendered thereon at the April term, 1880. The plaintiff excepted to certain rulings of the court and took a bill of exceptions, from which it appears that the Cross-Roads and Summit Point Turnpike Company is a corporation created by an act of the General Assembly of Virginia, passed March 29, 1851, for the purpose of constructing a turnpike road from a point on the Charlestown and Berryville turnpike in Clarke county to Summit Point depot in Jefferson county; that said road was constructed before the formation of the State of West Virginia, and the plaintiff, A. Moore, was elected president of said company, in 1868, by the board of directors and has continued to act as such ever since; that said road is about five miles in length and one half thereof is located in the State of Virginia and the other half in Jefferson county, W. Va.; that, by deed dated November 1, 1870, D. B. Morrison conveyed to the plaintiff, "A. Moore, president of the Cross-Roads and Summit Point Turnpike Company," the lot of land in controversy "for the use of said turnpike company," and that the plaintiff as such president and those under whom he claims had been in the actual possession of said lot for about twenty-seven years and up to the time of the entry of the defendant; that at a meeting of the board of directors of said company, held May 1, 1877, it was resolved that an action be at once instituted for the recovery of the property of the company lying in Jefferson county; that the house on said lot was built by the company for a toll-house and a Mrs. Wyndham was placed in the possession thereof by the plaintiff as toll-collector for the company in the year 1871, and she continued to occupy the same and the lot in dispute as such toll-collector until 1875, when she attorned to one Fleming who had been appointed by the county court of Jefferson county superintendent of that part of the turnpike lying in said county, and that the defendant succeeded Mrs. Wyndham in the possession of said toll-house and lot and claims to hold the same under, and accounts for the tolls of said turnpike collected by him to, said Fleming as the agent of Jefferson county; that, on May 22, 1875, the county court of Jefferson county, without notice to the plaintiff or the said company made an order, "that so

much of the Summit Point and Cross-Roads turnpike as lies in this county be taken charge of by the county," and appointed said Fleming superintendent thereof; and that at subsequent terms of said county court, held in July and November, 1875, certain of the private stockholders of said company moved said court to rescind the order made by it on May 22, 1875, taking charge of said road, and the said court overruled said motions and refused to rescind said order. These being substantially the facts certified, which the bill of exceptions states were all the facts proved in the case, the plaintiff and defendant each moved the court for certain instructions of which the following are all that I deem it necessary to copy in this opinion:

### PLAINTIFF'S INSTRUCTION NO. 1.

The court instructs the jury that even though they should believe that there has been irregularity in the holding of the meetings of the stockholders of said company, or irregularity in the meetings of the directors, there has been no forfeiture of their charter, unless the forfeiture has been ascertained by a judgment of a court in a proper proceeding for the purpose.

### PLAINTIFF'S INSTRUCTION NO. 2.

The court further instructs the jury that if they believe from the evidence that the interest which the State of West Virginia owned in said turnpike was only the right to hold so many shares of stock in said Turnpike Company, then chapter 39 of Code W. Va., nor any section under it, gave any right to the county court of Jefferson to take possession, without the consent of the company, of said lot in controversy, unless the same had been condemned; and if they further believe that the only title under which the county court, through its agent, entered upon the premises was the order or orders of the county court taking possession of said turnpike, then said entry was unlawful and said agent was a trespasser.

### PLAINTIFF'S INSTRUCTION NO. 3.

The court further instructs the jury that if they believe from the evidence that at the time of said entry by the agent

of the county court, the said turnpike company was actually managing and controlling the same through its officers and agents under the provisions of their charter, then the entry by the agent of the county court of Jefferson was unlawful and a trespass.

### DEFENDANT'S INSTRUCTION NO. 1.

The court instructs the jury that if they believe from the evidence that the lot in question was vested in A. Moore, president of Cross-Roads and Summit Point Turnpike Company, for the use of said company, and that said lot was a part and parcel of that portion of the turnpike road of said company lying in the county of Jefferson and that said portion of said road was taken possession of by said county of Jefferson under the order of the county court of Jefferson county, and that the said lot is used by said county for the purposes for which it was granted, then plaintiff cannot recover in this suit.

### DEFENDANT'S INSTRUCTION NO. 2.

The court instructs the jury that if they believe from the evidence that the defendant is in possession of the property under the order of the county court of Jefferson county, and that the same is a part and parcel of that portion of the Cross-Roads and Summit Point Turnpike Company lying in Jefferson county, and is used and enjoyed as a part thereof, then plaintiff cannot recover in this action.

The court gave to the jury the plaintiff's said first instruction, but refused the second and third and three others asked by the plaintiff, and, also, gave to the jury the first and second instructions of the defendant and refused another of similar import asked by him. The plaintiff excepted to the action of the court declining to give all the instructions asked by him and, also, to the granting the two instructions of the defendant.

From these instructions it is apparent that the contest in the circuit court was between the plaintiff as representing the Cross-Roads and Summit Point Turnpike Company and the defendant as tenant or representative of county of Jefferson. In order to understand the controversy thus presented it is necessary to determine the relation these contestants

bear to each other, if any, and the character of the title or claim asserted by them, respectively, to the subject in controversy.

The lot in dispute having been granted to the plaintiff, "A. Moore, president of the Cross-Roads and Summit Point Turnpike Company," "for the use of said Turnpike Company," the effect of said grant is to vest in the plaintiff the legal title as trustee for the said company. The words, "president of the Cross-Roads and Summit Point Turnpike Company," following the name of the plaintiff in the deed to him, can be regarded only as descriptive of the person and not as a qualification or limitation of the grant, but the words, "for the use of said Turnpike Company," create an express trust and convert the plaintiff into a trustee—*Scott* v. *Baker*, 3 W. Va. 285. The position, then, of the plaintiff is clearly that of trustee holding the legal title to the lot in dispute for the use of said corporation. The position of the defendant is shown to be that of tenant or agent of the county of Jefferson, and holding that relation his rights must be determined by those of the county—they can certainly in this case be no greater. The record shows no claim or title in said county, unless it is conferred by the order of the county court made on May 22, 1875. This order, being *ex parte* and made without notice to the plaintiff or the said corporation, could not, if it attempted to do so, transfer any rights of the plaintiff or said corporation to the county or in any manner divest or affect those rights. And the mere circumstance that certain of the private stockholders of said corporation subsequently appeared and moved said court to rescind said order which it declined to do could not confer jurisdiction on said court to pass upon the rights of the plaintiff or said corporation or give any validity to said order as against either of them—*Turpin* v. *Thomas*, 2 Hen. & M. 139. But, it is not clear that the county court by said order attempted to take charge of said road absolutely by the county of Jefferson. Most likely all that was intended by it was to take charge of the interest of the county therein—certainly that was all it had the legal power to do. And what was the interest of the county in said road? While the record does not show any interest in the county, it may be

assumed the court judicially knows that, by the policy adopted by the State of Virginia and which was carried on when said road was constructed, the said State, for the encouragement of internal improvements and the development of the State, made liberal subscriptions to the capital stock of almost every company incorporated by it for works of internal improvement and especially companies incorporated for the construction of turnpike roads. The general rule being to subscribe stock to such companies the presumption is that the State subscribed and owned stock in the turnpike company now in question. It is, also, known that by an act of the General Assembly of the re-organized government of Virginia, passed February 3, 1863, at Wheeling, said State transferred to the State of West Virginia, to the extent of the interest of Virginia, all property, real, personal and mixed, within the boundaries of the State of West Virginia, including "all lands, buildings, roads, and other internal improvements, or parts thereof situated within the said boundaries and now vested in this State, or in the president and directors of the board of the literary fund, or the board of public works thereof"—Acts 1862–3, chapter 68, section 1; *Caldwell* v. *Pringle*, 19 W. Va. 604. And by an act of the Legislature of this State, passed February 28, 1866, "the interest of this State in all turnpike roads and bridges within this State, is hereby transferred to the several counties in which the same or any part thereof may lie, and the boards of supervisors of the several counties * * * are hereby vested with all the rights, powers and duties heretofore vested in the State, as a stockholder in such road or bridge, among which shall be the power to establish gates and collect lawful tolls, and to do and transact all other lawful business"— chapter 117, Acts 1866. By subsequent statutes amending this and other acts, the duties imposed on the board of supervisors are conferred upon the county courts of the respective counties, and it is also provided that, "a county court may acquire by agreement, condemnation or otherwise, and hold the interest of the owners, shareholders or stockholders, or any one or more of them other than the State, in any road or bridge or public landing, so far as the same is within the limits of such county"—section 38, chapter 114, Acts 1872–3.

And by chapter 209 of the Acts of 1872-3, it is provided, in section 7 thereof, that "the supervision and control of every turnpike road shall be exercised by the county court of the county in which the same or any part thereof may be situated." By section 8 of the same chapter the county court is authorized to exercise the jurisdiction and control conferred upon any joint stock company, and "such jurisdiction and control shall be deemed to be consented to and approved by all the private stockholders of such company until the stockholder dissenting therefrom by motion, to be entered of record in the court of the county in which the road or any part thereof is situated, shall manifest his opposition to such control." But in section 13 of said chapter it is expressly declared that "this act shall not be so construed as in any wise to give to the county court of any county the management or control of any turnpike road or bridge belonging to any incorporated company who are, or shall be, managing and controlling the same according to the provisions of their charter, except that the county court may regulate the tolls thereon, and when said company shall fail to keep their road in good repair, shall have the power to suspend the collection of said tolls"—2 Kelly's Rev. Stat. chapter 173.

This legislation, it seems to me, was intended to transfer to the different counties the interest of the State in the turnpike roads or parts of such roads, lying in the respective counties and to confer upon the county courts of such counties the control of the interests of the State thus transferred to the respective counties, and also to give the county courts control of such roads, or parts of roads, as any county may by agreement, condemnation or otherwise, acquire under section 38 of chapter 114 of the Acts of 1872-3, or of such roads as may have been entirely abandoned by the corporation or private stockholders. But that it was not intended to give the county court jurisdiction and control over any turnpike road belonging to an incorporated company which shall be managing and controlling its road according to its charter, except the right to represent the stock acquired by the county from the State in such company, and to regulate the tolls. The plaintiff's third instruction submits to the jury the question of fact, and directs them, if they believe from the evi-

dence that at the time the agent of the county court entered upon the premises in controversy, the said turnpike company was actually managing and controlling the same under the provisions of its charter, then such entry was unlawful. Assuming the fact to be as submitted in said instruction, there could be no question, it seems to me, that the county court had no authority to take control of the road or the toll-house and, therefore, that instruction as well as the second instruction of the plaintiff should have been given, and the circuit court erred in refusing to give to the jury said instructions. And it also follows from what has been said that the said court also erred in giving to the jury the said first and second instructions asked for by the defendant, and it did not err in refusing to give the third instruction of the defendant. In the view taken of the controversy, as above indicated, by this Court, I regard the plaintiff's fourth, fifth and sixth instructions immaterial, and it is, therefore, unnecessary to pass upon them or express any opinion upon them in this case.

The charter of a corporation does not expire by reason of acts of omission or commission on the part of the company, even where they constitute a sufficient ground for declaring a forfeiture; but the franchises continue in full force until a forfeiture is claimed by the State granting them; and this can be done only in a proper legal proceeding by which the cause of forfeiture is ascertained and a dissolution adjudged. Morawetz on Private Corp. § 654. Therefore, the circuit court properly granted the first instruction of the plaintiff.

Courts of *law* recognize a corporation only as one body acting in the corporate name. The individual stockholders are not, in contemplation of law, parties to contracts made by the association in a corporate capacity, nor have they any *legal* rights or title to the property vested in the corporation. At law, a corporation and its stockholders are considered as distinct from each other; and the contractual relation between the stockholders is wholly ignored. The relation between a corporation and its several members may, for all practical purposes, be treated as that of trustee and *cestui que trust*. In contemplation of law, the property and rights of an incorporated company belong to the united association

acting in the corporate name, and not to the stockholders. The latter, however, are the real owners; and a technical trust thus arises in their favor, which will be protected and enforced by the courts of equity. The entire management of a corporation rests in the hands of its officers and agents. Within the scope of its charter a majority of the stockholders is supreme, and their acts are binding upon the whole. Redress for an injury to a corporation should be obtained, if possible, by the corporation itself, through its regularly appointed agents; and it is only when the corporation is disabled from proceeding on its own behalf, by reason of the misconduct or failure of its officers and agents to discharge their duties, that the stockholders may themselves proceed in chancery for the protection of their equitable rights. But when it is shown that the directors or managing officers of a corporation have refused to act on its behalf or are guilty of a wrong which the majority refuse to redress, equity will interfere at the suit of a stockholder. Morawetz on Corp. §§ 381, 386.

From the facts as they now appear in this case, it is evident that the county of Jefferson has no other interest in the house and lot in controversy in this action than that of a stockholder representing and controlling the the stock formerly owned by the State of Virginia in the Cross-Roads and Summit Point Turnpike Company. If such shall be made to appear on the trial of this action the said county can only be entitled to such redress as any other stockholder would be entitled to under the same facts and circumstances and none other.

For the foregoing reasons I am of opinion that the judgment of the circuit court should be reversed, the verdict of the jury set aside and a new trial granted the plaintiff, the costs of the former trial to abide the final judgment in the action; and that the plaintiff in error recover from the defendant in error his costs in this Court.

THE OTHER JUDGES CONCURRED.

JUDGMENT REVERSED.   CAUSE REMANDED.