## Richmond.

87  185
87  468

### NORFOLK & WESTERN R. R. CO. V. READ.

December 4th, 1890.

1. CARRIERS—*Connecting lines—Agents—Estoppel.*—Where contract for transportation of goods over connecting lines of railway is made with one railway company as agent of the other, and the latter company transports the goods and at the end of the trip presents a bill for the charges, it cannot, when sued for injury to the goods by its servants, deny the agency.

2. IDEM—*Right of action—Assignability.*—A right of action against a common carrier for injury to goods while in course of transportation is assignable.

3. IDEM—*Feme's suit—Assignment—Husband as witness.*—Pending suit by man and wife against common carrier for injury to her goods whilst in course of transportation, the plaintiffs for value without recourse, by deed, assigned the right of action to her father, for whose benefit and at whose costs the suit continued to be prosecuted: *held*, the husband was a competent witness at the trial in behalf of the assignee.

Error to judgment of circuit court of Botetourt county, rendered October 30th, 1889, in an action of trespass on the case, wherein Mrs. Anna E. Read and her husband, D. W. R. Read, were plaintiffs, and the Norfolk & Western Railroad Company was defendant.   The object of the suit was to obtain damages for injury done to goods which were the separate estate of the female plaintiff, whilst being transported over the defendant's railway, by its servants.   Pending the suit, by deed duly executed by the plaintiffs for value received, the right of action

was assigned, without recourse, *bona fide*, to W. A. Vallo, for whose benefit and at whose costs the suit was thereafter prosecuted.   At the trial, against the defendant's objection, the male plaintiff was permitted to testify in behalf of the assignee. The verdict was for the plaintiff for the sum of $2,250, with interest from 26th October, 1883, till paid, and there was judgment accordingly.   The defendant brought the case here on writ of error and *supersedeas*.   Opinion states the other facts.

*T. J. Kirkpatrick*, for the plaintiff in error.

*G. W. & L. C. Hansbrough*, for the defendant in error.

LACY, J., delivered the opinion of the court.

The case is as follows:   In the month of October, 1883, the agent of the plaintiff in the court below and her husband went to the office of the defendant company (the plaintiff in error here), in the city of Philadelphia, and hired a car to carry certain goods from Philadelphia, by way of connecting lines, to Blue Ridge Springs, Virginia; that the price mutually agreed on was $68; that this was paid, and the car loaded in Philadelphia under the supervision of the railroad company's agent; that no objection was made to the manner of loading, nor to the kind of freight put into the car at the time, but that after the car had been loaded and turned over to the company for despatch to its destination in Virginia, that the company opened and partially unloaded the said car, and put the goods taken out of this car into another car, and despatched both together to Virginia, making a separate and additional charge for the goods so removed and transferred to another car, upon the ground that they did not belong to the class of freight for which the special rate of $68 to the car-load had been granted,

because they were properly regarded merchandise, and not household effects.

It is an inference fairly deducible from the evidence, that the car in question—the first car loaded as mentioned—came safely to Roanoke City, without accident, that at this point it was deemed proper to transfer the car in question from the trucks or running gear upon which it had come from Philadelphia to and upon trucks situated upon the Norfolk and Western Railroad, of a different gauge, by means of a hoisting machine arranged for the purpose; that in making this transfer the long iron bolt, of great size and strength, which held the said car in place upon the trucks, in settling, missed the socket in the iron axle, and by the weight of the car was driven up through the bottom of the car a considerable distance, through the packed goods therein, and the car could not now, therefore, be fastened to the axle until this pin was driven down again.

To do this the car seals were broken, the doors opened, and the goods removed, and the pin driven into its place, and the car sent forward to its destination at Blue Ridge Springs, with one of the doors open and the other door cleated, but unsealed. The plaintiff's agent, receiving notice of the arrival of this car, went in with hands to unload it, when he found things, as he states, in indescribable confusion—packages had been opened, papers and contents scattered about, empty drinking-glasses broken and stained with liquor, packages containing liquor emptied; tapestries, curtains, and other embroidery mixed up with books, kitchen utensils, glassware, vases, furniture, ink bottles, all in a heap, and the contents of the wardrobe closet, which had been laid on the floor of the car, fastened down and packed with a miscellaneous quantity of small articles, and through which the above-mentioned iron coupling-pin had been driven, were pulled out and scattered about, and through the door of the wardrobe protruded the said coupling-pin, and the appearance that these things had been thrown about in order to get at the coupling-pin; private papers scattered all

over the car, and the library of books tumbled about, and these, with curtains and other fancy goods, were gummed up with miscellaneous liquors, ink from a broken ink bottle, and covered with coal-dust, and the damages declared at $3,394.

This was the plaintiff's evidence, and the defendant company resisted the demand with counter evidence, and offered evidence the object of which was to impeach the witness chiefly relied on by the plaintiff, and made an effort to exclude his evidence, upon the ground of his wife's interest; but the court admitted the evidence, upon the ground that the wife had parted with her interest, and had no interest; and the jury rendered a verdict for the plaintiff, and assessed her damages at $2,250, which verdict the court refused to set aside upon the motion of the defendant, and rendered judgment thereupon in accordance therewith. Thereupon the defendant company applied for and obtained a writ of error to this court.

The first ground of error assigned here is that the circuit court erred in its action in overruling the demurrer to the defendant's declaration, but we perceive no defect in the declaration, and there was no error in this.

The second assignment of error is that the circuit court refused to arrest the judgment, upon the ground that the evidence shows that the contract was not made with the defendant company, but with the Pennsylvania Railroad Company, in the city of Philadelphia. But it is evident that this contract was made through an agent of the defendant company, and that the defendant company not only participated therein, but presented a bill at Blue Ridge Springs, the end of the trip, for compensation for the freight in the other car, companion to the one injured, and accepted the compensation paid for the latter, and claimed the benefit of this contract, and, moreover, caused, through its servants, all the injury that was done, it being admitted that the car came through to the defendant company's line, at Roanoke, sealed up and in good condition, there being no hint by the defendant company of any injury

whatever inflicted before the car reached Roanoke, and after verdict it is too late for the defendant to disclaim the contract with which it is thus connected.

. The third assignment of error is that the circuit court of Botetourt county erred in its action in overruling the motion of the defendant company to exclude the evidence of the witness Read, who was the husband of the owner of the goods at the time they were shipped, and when the suit was brought. This claim has, however, been assigned by the plaintiff, and was so assigned, for value, before the objection taken to the admissibility of her husband as a witness. Before this assignment, or, to state it differently, while the wife was interested in the result of the suit, or any recovery which might be had therein, the husband was, beyond doubt, incapable of testifying as a witness in the case, because of the wife's interest. This is well settled by repeated decisions of this court. See *N. & W. R. R. Co.* v. *Prindle and Wife*, 81 Va., 122, and the cases there cited. Also the latter case of *Wiltz, Biedler & Co.* v. *Osborne and Wife*, 83 Va., 257; *King* v. *Turner* 85 Va., 390.

But if the chose in action in question was assignable, it is clear that the wife's interest ceased upon its execution, and there is no valid ground to object to the admission in evidence of the testimony of the husband. While a right of action for mere personal *torts*, such as assault and battery, false imprisonment, malicious prosecution, defamation and deceit, which die with the party and do not survive to the personal representative, cannot be assigned (*Comegys* v. *Vane*, 1 Pet., 213; *Burt* v. *Baldwin*, 30 Barb., 182; *Rice* v. *Stone*, 1 Allen, 566; *Devlin* v. *Mayor*, 63 N. Y., 275; *Meech* v. *Stoner*, 10 N. Y., 29; Va. Code of 1873, ch. 145, secs. 8, 9 and 10), a right of action to recover damages for an injury to property, real or personal, may, however, be assigned. *Gillett* v. *Fairchild*, 4 Denio, 80; *Hudson* v. *Plitt*, 11 Paige, 180; *McBride* v. *Farmers Bank*, 26 N. Y., 456; *North* v. *Turner*, 9 Serg. & R., 244; *Lan-*

*guid* v. *Wheeler*, 22 Cal., 142. See on this subject, for a complete treatise Am. & Eng. Encyclopœdia of Law, Assignments, p. 832.

And it may be said generally that every demand connected with a right of property, real or personal, may be assigned, and it seems that all rights of action which would survive to the personal representative may be assigned. *Buller* v. *N. Y. & E. R. R. Co.*, 22. Barb., 110.; *Patton* v. *Wilson*, 34 Penn., 299; *Jordan* v. *Gillen*, 44 N. H., 424.

And a right of action against a common carrier for not delivering goods is such a right of action as is assignable. *Jordan* v. *Gillen*, *supra;* 1 Chitty Pl., 68; 2 Maule & Sel., 408; 9 Sergt. & Rawle, 244.

In the case of *Hodgman* v. *W. R. R. Corporation*, 7 How. Pr. Rep., p. 492, Harris, J., said : At common law, no mere right of action was assignable as to pass the legal right of the assignee when it affected the estate of the assignor. Though the legal right still remained in the assignor, so that the action must be prosecuted in his name, the court, exercising its equity power, would protect the right of the assignee. When the right of action is of such a nature as not to be the subject of contract, as in the case of personal or relative rights, it cannot be assigned. The action can only be maintained by the. party who has been injured, and when he dies the right of action dies also.

On the other hand, when the injury affects the estate rather than the person, when the action is brought for damage to the estate and not for personal suffering, the right of action may be bought and sold. Of course, such a right of action is assignable. *The People* v. *Tioga Common Pleas*, 19 Wend., 73; *Comegys* v. *Vane*, 1 Peters, 213, opinion of Story, Judge.

As to the question whether a mere right *ad litem* for unliquidated damages, founded on a *tort*, can be lawfully assigned. This question, says Nesmith, J., in *Jordan* v. *Gillen*, *supra* (decided in 1862), has recently been decided in the affirmative in

the State of New York.   There it has been held that merely personal actions, which die with the person, are not assignable, but taking and converting personal property, or for injury to personal property, are assignable, and it seems generally all such rights of action for a *tort* as would survive to the personal representative may be assigned so as to pass an interest to an assignee, which he can now assert under the Code in a civil action in his own name, as he might at common law assert in the name of the assignor.

Under the Virginia Code, in force when this action was instituted, such assignee could not sue at law in his own name, such being the common law rule, and chapter 142, section 17, providing only for the designated cases of the "assignee of any bond, note, or writing not negotiable," who is thereby authorized to sue in his own name in the designated cases. This assignment was proved in the circuit court, and the suit proceeded in the name of the assignor, for the benefit and at the costs of the assignee; and to this there was no valid objection.   The wife having no interest in the suit, there was no valid objection to the testimony of the husband.

We perceive no objection to the instructions given by the court; the principles they enunciate are established and settled, and the first instruction of the plaintiff was properly refused; and this may be said of the third and fourth instructions.

There was no error in the action of the court in giving or refusing any of these instructions of which the plaintiff in error can complain, the court having followed the case of *McConnell* v. *R. R.*, 86 Va., 494.   And there was no error in the action of the court in refusing to set aside the verdict and grant a new trial.   The damages were, beyond a doubt, caused by the negligence of the defendant's servants; and if the damages assessed were too large, there was evidence before the jury tending to prove an even greater amount of damage, and the jury were the proper triers of the weight to be given

to the testimony of witnesses. There was evidence tending to discredit the plaintiff's witness, but the jury found otherwise, and their decision upon this question of credibility is final.

Upon the whole case, we think there is no error in the judgment complained of, and the same must be affirmed.

JUDGMENT AFFIRMED.