## Richmond

### CITY OF LYNCHBURG V. MITCHELL & OTHERS.

November 21, 1912.

1. WATERS AND WATERCOURSES—*Diversion—Damages—Measure—Assignment.*—Where a lower proprietor of land is damaged by the permanent diversion of water from a stream by a city, and after the diversion such proprietor sells and conveys his property thus damaged to a third person and assigns to him all the assignor's rights to and claims for damages resulting from such diversion, the purchaser is thus clothed, as grantee and assignee, with all the rights which belonged to the owner of the property at the time of the diversion, and has the right to recover the damages resulting from such diversion. Such damages are a legitimate subject of assignment, and it is immaterial that the assignee was also the grantee of the land who purchased it at a reduced price in consequence of the diversion. The damages in such case are measured by the difference between the value of the land before and after the diversion. It is immaterial what the purchaser paid for the rights acquired by him, as this could neither decrease nor increase the city's liability for diverting the water.

2. APPEAL AND ERROR—*Excessive Verdict—Evidence to Support.*—A verdict assessing damages in favor of a plaintiff will not be set aside as excessive where there is sufficient evidence in the cause to sustain the verdict, if the jury believed the plaintiff's witnesses as to the damages sustained.

Error to a judgment of the Circuit Court of Amherst county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*N. C. Manson, Jr.,* for the plaintiff in error.

*Aubrey E. Strode* and *Volney E. Howard,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This action was brought to recover damages from the city of Lynchburg for the diversion of water from a water mill and the land upon which it is situated. There was a verdict and judgment in favor of the plaintiffs (defendants in error here).

The first error assigned is to the action of the court in giving instruction No. 2, offered by the plaintiffs, and in refusing to give instruction No. 1 asked for by the defendant.

The defendant's instruction which the court refused to give is in the words following:

"The court instructs the jury that if they shall believe from the evidence that the plaintiff is entitled to recover, they must find for the plaintiff in an amount equal to the difference in the value of the property in the delcaration described, before the water was diverted therefrom, and its value after such diversion had been completed, *less any reduction in the price paid for the property by the plaintiff, because of the diversion of the water therefrom by the city.* Any amount found for the plaintiff is to bear interest from the time such diversion took place."

The only substantial difference between that instruction and No. 2, given at the instance of the plaintiffs, is shown by the words in italics. The instruction given told the jury that the measure of the plaintiffs' damages, if entitled to recover, was the difference between the market value of the property injured before the diversion and its market value after the diversion. By the instruction refused the court was asked to tell the jury that the true measure of the plaintiffs' damages was the difference in

value of the injured property before the diversion and its value after the diversion, less any reduction in the price paid for the property by the plaintiff because of the diversion of the water by the defendant.

It is conceded by the defendant that if the plaintiffs had been the owners of the property injured when the water was diverted, the instruction given by the court would have been correct, but its contention is that since the plaintiffs' evidence tended to show that the market value of the property before the diversion was from $10,000 to $15,000 and it appeared that the plaintiffs had, since the diversion, purchased the property for $4,375, a sum much less than they would have had to pay for the property, but for the diversion, therefore, they have received in effect compensation for the damages done by the diversion to the extent of the difference between what the property was worth before the diversion and the consideration paid for it by the plaintiffs.

It is true the plaintiffs acquired the property after the water had been diverted by the city for a much less price than the testimony tends to show it was worth before the diversion. The owners of the property at the date of the diversion subsequently conveyed it to the plaintiffs and assigned to them all their rights to and claim for the damages resulting from the diversion. The plaintiffs were thus clothed, as grantees and assignees, with all the rights which belonged to the owners of the property at the time of the diversion, and had the right to recover damages resulting from the diversion. *Norfolk & Western R. Co.* v. *Read,* 85 Va. 185, 12 S. E. 395; *Tyler, Receiver,* v. *Ricamore,* 85 Va. 466, 12 S. E. 799; Code, sec. 2860.

The plaintiffs having acquired all the rights of the original owners to the damaged property and to the damages resulting from the diversion of the water, there is no reason why the plaintiffs are not entitled to recover the

damages which the original owners might have recovered. The consideration paid by the plaintiffs for the property and rights acquired by them could neither decrease nor increase the defendant's liability for diverting the water, and could in no way affect the measure of the plaintiffs' recovery. The diversion of the water by the defendant city being permanent, as is conceded, the trial court neither erred in giving instruction No. 2 asked for by the plaintiffs, nor in refusing to give the defendant's instruction No. 1. See Farnham on Waters and Water Rights, secs. 510, 514; 3 Sedgwick on Damages, sec. 941.

The next error assigned is to the refusal of the court to set aside the verdict because it was contrary to the law and the evidence.

Under this assignment of error it is insisted that an action for damages for the diversion of water can only be brought by the person who had the legal title to the real estate injured at the time of the diversion, and cannot be maintained by a grantee of the land or the assignee of the damages.

If it be conceded that the plaintiffs, by their purchase of the property injured did not, as grantees of the real estate, become entitled to the damages, they did acquire by assignment all their grantor's claim to the damages, and were, therefore, as assignees of their vendor's rights, clearly entitled under our decisions to recover the same.

In *Norfolk & Western R. Co.* v. *Read, supra,* it was held that a right of action against a common carrier for injury to goods while in the course of transportation was assignable.

And in *Tyler, Receiver,* v. *Ricamore, supra,* it was held, that a right of action against a railroad company for negligently setting fire to real property was assignable.

This seems to be the rule in many, if not most of the States. See 4 Cyc. 24, and notes where numerous cases

are cited.    Indeed, as we understand the reply brief of the defendant, it does not controvert the general proposition that the assignee of the damages in question would be entitled to recover all that his assignor could have recovered, if such assignee were a person other than the vendee of the land, who had purchased it at a decreased price because of the diversion of the water.    As before stated, it is wholly immaterial in our opinion to the defendant city whether the assignee of such damages is the purchaser of the land, or it was purchased by some other person, or the land still remained the property of the assignor.    The defendant is only responsible for the damages which have resulted from the diversion of the water by it, and it is a matter of no concern to it to whom it is required to pay them, or what the assignee paid for them, provided the city's ·payment protects it from any further liability on that account.

Another ground relied on for setting aside the verdict of the jury is that it is excessive.

The plaintiffs introduced three witnesses who knew the mill property and who were competent to express an opinion as to the value of the property (2 Lewis on Eminent Domain [2nd ed.], sec. 437), who stated that with the water undiverted the property was worth $10,000 to $15,000 (varying in their estimates between those two sums), and that by the diversion of the water the property was reduced in value from one-half to three-fourths.    It further appeared that it required nearly eight millions of gallons of water daily to run the mill at its full capacity; that the dam in which the defendant collected the water held five hundred million gallons; that its pipes for conveying the water from the dam to the city had capacity to carry daily eight million gallons, to meet the future requirements of the city, and had since the diversion been conveying to the city between three million and four million gallons.    The evidence of the plaintiffs further tended

to prove that during the late summer and early fall months, the period during which there was most grinding to do at the mill and the stream diverted was generally lowest, the mill, on account of the diversion, could not be run more than one-third to one-half the day if the season was dry.

The defendant introduced evidence tending to prove the price at which the mill had rented before and after the diversion; that in dry seasons, before the diversion, the mill had frequently to be shut down for want of water; that in wet seasons the water diverted did not interfere with the running of the mill. This and other evidence offered by the defendant tended to show that the property was not as valuable before the diversion, and that the injury done by the diversion was not so great, as stated by the plaintiffs' witnesses. But if the jury believed the plaintiffs' witnesses as to the value of the mill property before and after diversion, there was sufficient evidence in the cause to sustain their verdict.

The court is of opinion that there is no error in the judgment complained of, and that it should be affirmed.

*Affirmed.*