# CHARLESTON

WILLIAMSPORT HARDWOOD LUMBER COMPANY v. BALTIMORE &
OHIO RAILROAD CO.

Submitted September 15, 1910.   Decided ·February 11, 1913.

1.  CARRIERS—*Carriage of Goods—Control of Goods—Rights of
    Consignee.*

    A consignee of lading under a contract of shipment by a
    common carrier has a beneficial interest therein, entitling
    him to sue for and, upon proper proof, recover damages for loss
    or injury thereto, or for unreasonable and negligent delay in
    delivery.  (p. 742).

2.  SAME.—*Carriage of Goods—Loss or Injury—Presumption.*

    Delivery of the lading to the first carrier in condition for
    safe transportation over its line warrants the presumption,
    in absence of proof to the contrary, that the lading remained
    in such condition when received by each succeeding connecting
    carrier, including the terminal carrier, and that the loss,
    injury or delay was occasioned by the latter's negligence.
    (p. 745).

3.  SAME—*Limitation of Liability—Notice of Claim—Construction
    of Limitation.*

    A clause in a bill of lading given by a carrier for goods
    shipped, providing that "claims for loss or damage must be
    made in writing to the agent at point of delivery promptly
    after arrival of the property, and if delayed for more than
    thirty days after the delivery of the property * * * no
    carrier hereunder shall be liable in any event", relates to the
    loss of and injury to the goods, and does not preclude recov-
    ery for delay in transportation.  (p. 747).

4.  SAME—*Carriage of Goods—Limitation of Liability—Validity.*

    A carrier can not by contract preclude recovery for damages
    to a shipment caused by its negligence.  (p. 744).

5   TRIAL—*Taking Case from Jury—Direction of Verdict.*

    Upon demurrer to the evidence by defendant, it is error in
    the trial court to direct the jury to find the full amount of
    plaintiff's claim, especially where such evidence is vague,
    uncertain, indefinite, and in a substantial degree incompetent
    and therefore inadmissible. Such error is not cured by
    directing the jury to return to its chamber and further consider
    of its finding, and by its doing so and finds the same amount
    as in the first insance.  (p. 748).

6. ASSIGNMENTS—*Rights Assignable—Claim for Injury to Shipment.*

A right of action against a common carrier for injury to goods while in course of transportation is assignable.   (p. 742).

Error to Circuit Court, Randolph County.

Action by the Williamsport Hardwood Lumber Company against the Baltimore & Ohio Railroad Company.   Judgment for plaintiff and defendant brings error.

*Reversed and Remanded.*

*U. G. Young,* for plaintiff in error.

*D. H. Hill Arnold,* for defendant in error.

LYNCH, JUDGE:

The plaintiff in this action seeks to recover of the defendant damages for loss of and injury to parts of a shipment of machinery from Axton, Va., to Wees Siding, W. Va.   A trial was had; and upon demurrer to the evidence by the defendant the court directed the jury to find a conditional verdict for the plaintiff for the full amount of its claim, and over defendant's objection entered judgment on the verdict.   The case is now before us upon a writ of error.

1.   The first assignment demanding consideration relates to the action of the court in overruling the demurrer to the declaration.   The defendant insists that the declaration is fatally defective in at least two respects: (a) failure to aver title in the plaintiff; (b) failure to aver notice of loss and damage to the shipment.

(a) The declaration does sufficiently aver title in the plaintiff, but not with that degree of certainty usually observed in good pleading.   It avers delivery of the shipment by J. E. Williams to the carrier at Axton, Va., to be by it and other connecting carriers delivered to him as consignee at Wees Siding.   Both counts contain the same averments, and for the purpose of this action, sufficiently aver title.   No rule of pleading requires an averment of absolute ownership in actions of this character.   A consignee or bailee, if not the true owner, has a special property in the goods sufficient to maintain the action.   In fact, any one having a beneficial interest may sue and recover.   But the legal

and reasonable presumption is that the consignee is the owner, entitled to accept delivery at the terminal point and sue for failure of the carrier to deliver in good condition; and, in the absence of authority from him, he is the only one to whom the carrier, in the discharge of its obligation as such, can make delivery, regardless of his actual interest. 6 Cyc. 510, 515. The fact that, as in this case, the consignor and consignee is the same person adds emphasis to this otherwise reasonable rule. Although the declaration does not with precision aver title in the plaintiff to the property constituting the shipment, it nevertheless avers assignment by Williams for a valuable consideration of all his right, title and interest in the damages the recovery of which it seeks in this action. He substituted it in his stead, with authority "to institute proceedings upon said claim if it so desires, or to settle, compromise or adjust it in any manner *they* see proper". The assignee of any account may maintain thereupon any action in his own name which the original payee might have brought. Code, 1906, ch. 99, §14, serial §3452; 4 Cyc. 67-69; *Railroad Co. v. Read*, 87 Va. 185; *Tyler* v. *Ricamire*, 87 Va. 466, 468; *Lee* v. *Hill*, 87 Va. 497; *Dillard* v. *Collins*, 25 Grat. 343.

(b) This objection finds support in that clause of the bill of lading providing, in the form usually employed by carriers, that "claims for loss or damage must be made in writing to the agent at point of delivery promptly after arrival of the property; and if delayed for more than thirty days after the delivery of the property, or after due time for the delivery thereof, no carrier hereunder shall be liable in any event". Neither party offered evidence tending in any degree to show the "due time for delivery" of the shipment at its destination. Nor is it permissible to assume from the delay in delivery that thirty days or more elapsed after the expiration of the "due time". Hence, whether that part of the clause is valid because reasonable, or invalid because unreasonable, it is unnecessary to decide. In fact, it can not properly be decided, in the absence of the testimony suggested. The clause, so far as applicable to the facts in the record, is upheld by the weight of authority. Reason favors it. It is fair and just to the carrier, and works no hardship on the shipper. Compliance

with its requirements benefits both. It affords reasonable notice to the former, admonishing it of liability which it may avoid by finding and delivering the lost goods, or by adjusting the loss with the owner without litigation. Bills of lading contain the constituent elements of contracts, the usual consideration being a reduced rate of transportation because of this provision. The same rules of construction generally applicable to contracts apply with equal force to bills of lading. The rule is well settled that, in the absence of fraud by the carrier's agents, the presumption is that the shipper read, understood and assented to the conditions expressed in the contract of shipment, and that he can not relieve himself from its terms by showing its execution by him without due care or in ignorance of its terms. 4 Elliott on Railroads, §1502a. Construing a clause identical in its terms with that before us, the case of *Carbonic Co.* v. *Railroad Co.* (Va.), 58 S. E. 569, 13 L. R. A. (N. S.) 753, held it valid and binding, and compliance therewith a prerequisite to the maintenance of an action to recover damages, notwithstanding a statue of the state providing that "no contract, receipt, rule or regulation shall exempt any common carrier, railroad or transportation company from the liability of a common carrier which would exist had no contract been made or entered into." *Trust Co.* v. *Railroad Co.,* 107 Fed. 628.

We hold the clause reasonable and valid so far as applicable to the facts of this case. Williams, the shipper, evidently undertook to comply with its conditions, thus recognizing its binding force and effect. He at first refused to accept the lading because of its impaired condition on arrival, and notified the local agent of the terminal carrier of his refusal. He then wrote to the claim agent of the Danville & Western Railway Company, the initial carrier, and of the Western Maryland, the terminal carrier. While the defendant objected to the proof of the notice, it sufficiently indicates at least an effort on his part to communicate knowledge to the proper representatives of the companies.

If, however, the duty devolved on the plaintiff to show these facts by proof, a like duty required it to aver in its declaration compliance with the condition in this respect. *U. S. Mail Line Co.* v. *Carrollton Co.,* 101 Ky. 658; *Trust Co.* v. *Railroad Co.,*

*supra;* 6 Cyc. 506 ; 1 Hutch. Carriers, §442 (§259).   The author in the section last cited holds that the condition requiring claims to be filed within a definite time will be construed as referring to claims for injuries to the goods shipped, and not to delay in ·delivery.   *Delaney* v. *Express Co.,* 70 W. Va. 502.

The case before us is readily distinguishable from *Bosley* v. *Railway Co.,* 54 W. Va. 563.   The latter held the clause invalid, not because compliance was a prerequisite to recovery, but because of the unreasonable limitation upon the extent of plaintiff's recovery for the damages caused by defendant's negligence.

The circuit court should have sustained the demurrer, with leave to the plaintiff to amend its declaration.

2.   In transit the edge part of the lading, was damaged, rendering it unfit for further use as such.   The defendant carried it safely and delivered it to the terminal carrier, the Western Maryland Railroad, on the usual place of transfer, at Belington, for transportation to Wees Siding.   The latter declined to receive the carrying car, because the edger protruded over the end of the car rendering it unsafe for carriage, and so notified defendant.   The latter's car inspector promptly proceeded to assemble the necessary force and appliances to make the proper adjustment.   In the meantime the agents of the terminal carrier coupled to the car for the purpose of shifting it to another track, and in doing so dislodged the edger, causing it to fall to the ground and break.   Of course, the duty devolved on defendant to deliver the lading in transportable condition to the succeeding carrier.   6 Cyc. 483.   But the negligent act of the latter interfered and prevented the readjustment, and thus became the proximate cause of the injury, thereby absolving the defendant from liability therefor.   6 Cyc. 483.

3.   Plaintiff seeks to recover from defendant damages for the actual loss of other parts of the lading.   While the proof sufficiently establishes the loss, it only inferentially traces it to defendant's negligence.   In cases of this character, where loss occurs and the proof shows, as in this case, delivery in good condition to the initial carrier, the legal presumption *ex rei necessitate* is that such condition continues, in the absence of proof to the contrary, until it reaches its destination.   Each

succeeding carrier, in accepting the lading, receives it in view of this presumption. In 6 Cyc. 490, the rule as stated is that "on proof of delivery to the first carrier in good condition and receipt by the second without objection, it will be presumed in an action against the second carrier that the goods were still in the condition in which they were received by the first carrier. Indeed, the weight of authority seems to be in support of the general proposition that if they are delivered by the last carrier in damaged condition the presumption arises, without further evidence, that the damage occurred while in the possession of the last carrier, and that the burden is upon him to prove that they were in damaged condition when received by him, the double presumption being entertained that they were accepted in good condition by the first carrier and that such condition continued until their receipt by the last carrier, notwithstanding transportation over intermediate lines". 4 Elliott on Railroads, §1450; 3 Hutch. Carriers, §1348 (§761); *Beede* v. *Railway Co.,* 90 Minn. 36, 95 N. W. 454, 101 Am. St. 390, and extended note. The difficulty, however, in the application of this rule to the case in hand is that the bill of lading merely shows "1 car of machinery", and does not specify the articles lost, although the proof shows their delivery to the first carrier in good condition as a part of the lading. The intermediate carrier could not by the closest scrutiny ascertain whether the original shipment was intact when it passed into its custody. But, even if it could so ascertain, the presumption still remains applicable to the terminal carrier, successor to the defendant, absolving the latter from liability without proof that the loss occurred while the shipment was in its custody. It is unnecessary to express an opinion upon the effect of the proof in this particular, as it may be supplied upon the second trial.

4. In the main the proof offered in support of plaintiff's claim of damages for "delay in delivery" is uncertain, indefinite, inconclusive. It shows expectation, exaggerated ideas of prospective profits, and comes within the rule discussed in *Botkins* v. *Arnold,* 48 W. Va. 108, and *James* v. *Adams,* 8 W. Va. 568, and *Delaney* v. *Express Co.,* 70 W. Va. 502. Williams says: "I filed a claim of $200 for loss of time with my men and teams, as the car contained all of the tools we were to work with. I

brought the teams here and paid the men's wages and fed the horses something like six weeks, waiting for the car to come". "I filed a claim against them for that amount, but that did not cover half the amount". On cross-examination, to the question, "How do you estimate these damages", he answered, "By the time I was knocked out of the use of the mill and the expense I was put to. Two hundred dollars doesn't cover half of it". "That is about the usual way of estimating damages. A man would estimate damages from the amount of profits he would make per day out of the business" He says his damages "would be about twenty-five dollars per day". He was then asked, "Then you said you were damaged on account of your horses and men, didn't you? Yes. How much did you assess on that account? Well, I didn't figure into it, although I was damaged. I had these horses to feed and these men to pay". "I figured that in on the profits I would have made out of the business if I had it in operation". He is the only witness testifying as to these damages. In substance, this is the extent of his testimony. This evidence the court, on motion of defendant, should have excluded, because incompetent.

No doubt plaintiff deemed the averment in the declaration, that Williams was then under contract to cut and manufacture certain timber, sufficient to warrant evidence relating to special damage. If so, it was ill advised. The rule is well settled that in order to recover special damages the plaintiff must aver and prove the special contract out of which the breach arose, and show by competent proof knowledge thereof by the carrier at the time of shipment. This is the English rule, announced by Pollock, C. B., in *Wilson* v. *Dock Co.,* L. R. 1, Exch. 177, followed in *Hadley* v. *Baxendale,* 9 Exch. 341, and the one universally adopted in this country. *Scott* v. *Steamship Co.,* 106 Mass. 468; *Railway Co.* v *Cole* (Tex.), 16 S. W. 176; *Murrell* v. *Express Co.,* 54 Ark. 22, 14 S. W. 1098; 4 Hutch. Carriers, §1367. In the Hadley case plaintiff sought recovery for delay in delivery of a mill shaft, during the absence of which the mill stood idle, thus occasioning serious loss and damage to the owners. The court held recovery not allowable in absence of knowledge by the shipper of the necessity of prompt delivery. But, while the rule is applicable in the case before us, and by

reason thereof the evidence offered by plaintiff held incompetent, it must not be inferred that he may not sustain his right to recovery therefor by competent proof establishing either or both general or special damages.

5.   In addition to other grounds in support of its motion for a new trial, the defendant relies upon the action of the court in directing the jury to find in its conditional verdict the entire amount of plaintiff's claim.   At the conclusion of the trial, before action on the demurrer to the evidence, the court directed the jury to find the following verdict: "We the jury find a verdict for the plaintiff and assess his damages at the sum of $774.63, if the law be for the plaintiff on the defendant's demurrer to the evidence, but if the law be for the defendant then we find a verdict for the defendant".   The amount so returned is the aggregate of the items of plaintiff's bill of particulars.   The defendant then objected to the verdict.   "The court overruled the objection, and sustained such verdict. Thereupon, after said verdict was so returned and read by the clerk, but before the jury had left the jury box and before the jury had been discharged, the jury was sent to their room over the objection of counsel for the defendant to further consider of its verdict, to which action of the court in sending the jury to its room after the court had directed a verdict and after the verdict had been returned by the jury, the defendant by counsel objected, and the court overruled such objection and directed said jury to go to its room to consider of its verdict, to which action of the court defendant by counsel excepted".   We think the court erred in this respect, not only for the reasons assigned, but because of the impropriety of the court fixing any amount for the finding of the jury.   It was the province of the jury to ascertain and determine the amount of damages, especially in view of the evidence before it.   With this right and privilege the court improperly interfered.   *Fredlock* v. *Core*, 21 W Va. 530; *Humphrey* v. *West*, 3 Rand. 516; *Railroad Co.* v. *Harman*, 83 Va. 553.

For reasons stated, the judgment is reversed, the verdict set aside, the demurrer to the declaration sustained with leave to plaintiff to amend, and the case is remanded to the circuit court

for further proceedings to be had therein in accordance with the principles herein announced.

*Reversed and Remanded.*