# CHARLESTON.

Barkers Creek Coal Co. *v.* Alpha-Pocahontas Coal Co.

Submitted April 30, 1924.   Decided July 1, 1924.

1. Assignments—*Assignee Cannot Sue in Own Name for Recovery on Obligations Arising on Tort; "Account."*

   Section 14, chapter 99, Code, which provides that the assignee of any bond, note, account, or writing, not negotiable, may maintain thereupon any action in his own name, without the addition of "assignee" which the original obligee or payee might have brought applies to obligations arising out of contract, either express or implied, and not to obligations arising from tort.   (p. 704.)

2. Same—*Assignee of Claim Arising Out of Tort to Property May Not Sue in His Own Name, But in Assignor's Name for His Use.*

   While a claim arising out of a tort to real or personal property is assignable, the assignee can not, under section 14, chapter 99, Code, or at common law, maintain an action thereon in his own name; such action may be maintained in the name of the assignor for the use of the assignee. (p. 704).

3. Same—*Statutory Penalty for Mining Near Division Line Without Written Consent Not Assignable.*

   The statutory penalty prescribed under section 7, chapter 79, Code, for mining coal within five feet of the division line of property without the consent in writing of the adjoining owner is not assignable.  (p. 707).

4. Same—Corporations—*Parent Corporation Cannot Maintain Action for Statutory Penalty as Assignee or Stockholder of Subsidiary Corporation.*

   Where at the time such penalty is incurred the adjoining owner is a corporation whose capital stock is all owned by a parent corporation, the owner may not assign its right to exact the penalty to such parent company so as to enable it to recover the penalty in an action in its own name, nor can the parent corporation, merely because it has all the capital stock of the owner corporation, maintain the action in its own name, since a mere stockholder in a corporation has no legal right or title to the property of the corporation.   (p. 708).

Miller, Judge, absent.

Certified questions from Circuit Court, Wyoming County.

Action by the Barkers Creek Coal Company against the Alpha-Pocahontas Coal Company. The court overruled a demurrer to certain counts in the declaration, and the questions arising thereon were certified for review.

*Affirmed.*

*Ashton File, W. W. Goldsmith, J. A. Toler,* and *Price, Smith & Spilman,* for plaintiff.

*Damron & Preston,* for defendant.

MEREDITH, PRESIDENT:

This is an action of trespass on the case. The declaration consists of seven counts. The circuit court overruled a demurrer to the first two and sustained it as to the last five counts. The questions arising thereon were certified for review.

The first count charges in substance that by lease dated the 4th day of January, 1915, Pocahontas Coal & Coke Company leased to Cooper-Pocahontas Coal Company a tract of 1,013.84 acres of land therein described by metes and bounds, situated in Wyoming County, for coal mining purposes for the term of thirty years to be reckoned from the first day of September, 1914, and thereby granted to such lessee the sole and exclusive right and privilege of mining and removing coal from all the veins or seams of coal underlying such land for the full term thereby created; that Cooper-Pocahontas Coal Company immediately entered into possession of the premises and began to mine and remove one of the seams of coal so leased to it; that by deed of assignment dated the first day of May, 1918, it assigned and transferred unto plaintiff the said lease and also thereby assigned, transferred and set over unto the plaintiff all accounts and bills receivable and all other obligations or liabilities due to it of whatever kind, wheresoever situated and by whomsoever due; that the lessor, Pocahontas Coal & Coke Company, joined in such assignment thereby evidencing its consent thereto; that the plaintiff accepted the assignment; that such assignment operated to transfer to and vest in the plaintiff the lease and all

96 W. Va.

accounts and bills receivable and all other obligations and liabilities due to Cooper-Pocahontas Coal Company of whatever kind, wheresoever situated and by whomsoever due at the time such assignment was made; that there was included in said assignment unto the plaintiff the damages accrued or accruing to Cooper-Pocahontas Coal Company by reason and on account of any and all of the trespasses and encroachments complained of.

That prior to the institution of this action Pocahontas Coal & Coke Company also let and leased unto the defendant Alpha-Pocahontas Coal Company certain lands adjoining the tract embraced in the lease to Cooper-Pocahontas Coal Company; that the land so leased to the respective parties is underlaid with valuable seams of bituminous coal; that the defendant was also engaged in mining and removing from the tract of land leased to it the same seam or vein of coal which the plaintiff was engaged in mining and removing from the land leased to it; that the defendant on or about the first day of January, 1918, and upon and at divers other times from that date until the commencement of this action, did unlawfully, carelessly, knowingly and wilfully, open, dig, mine and remove the said seam of coal outside of and beyond the boundary and division line between the property leased to the respective parties into the land leased to the plaintiff in sundry places and for long distances without the knowledge or consent of the plaintiff or of Cooper-Pocahontas Coal Company in writing or otherwise and that the defendant also drove entries, air ways and rooms and prosecuted its mining operations therein and penetrated into and entirely broke the barrier pillar along the division or dividing line between the land leased to the plaintiff and defendant respectively and so carelessly and negligently mined and removed coal therefrom that the plaintiff was compelled to and did establish barrier pillars in said seam of coal on the land so leased to Cooper-Pocahontas Coal Company for a long distance which became and was necessary to be done in order to protect the mine of the plaintiff and as well also to protect the mine of the defendant; that the barrier pillars so established contain 3000 tons of coal which can not now be mined, but which otherwise could have been mined by the plaintiff but for the encroach-

ments so made by the defendant and that such 3000 tons of coal are in consequence thereof totally lost to the plaintiff.

That the defendant so carelessly and negligently mined and removed the coal from the said seam on the premises leased to Cooper-Pocahontas Coal Company and within the territory encroached upon that 5000 tons now therein remaining and not mined and removed can not now be mined and removed by this plaintiff and in consequence thereof is totally lost to the plaintiff, but which could otherwise have been mined and removed by the plaintiff but for the careless and negligent manner in which parts of said seam of coal within the territory encroached upon were mined and removed by the defendant; that the 3000 tons and 5000 tons of coal so lost to the plaintiff are of the value of $1.00 per ton in place, making a total value of $8000.00.

That the defendant falsely represented unto the Pocahontas Coal & Coke Company, the common lessor of the plaintiff and defendant, and as well also falsely represented unto the plaintiff that it had not mined, removed or taken any of the coal from the land so leased to the plaintiff nor had it committed any of the trespasses complained of; that the defendant has from the time of making the said several encroachments and of committing the said several trespasses thence hitherto fraudulently concealed the encroachments and trespasses committed by it from Cooper-Pocahontas Coal Company and from the plaintiff so that the plaintiff is not advised as to the specific times when all of the trespasses and encroachments complained of were committed by the defendant and that by reason of the false representations so made, and of the fraudulent concealment thereof, by the defendant neither Cooper-Pocahontas Coal Company nor the plaintiff discovered any of the trespasses and encroachments complained of until immediately prior to the institution of this action nor was it reasonably possible for either Cooper-Pocahontas Coal Company or the plaintiff to have discovered the trespasses and encroachments so committed by the defendant until immediately prior to the institution of this action when the same were discovered by the plaintiff.

The second count contains substantially the same allegations as those contained in the first count except in the second count

it is charged that on or about the first day of January, 1918, and upon and at divers other times from that date until the commencement of this action the said defendant opened the vein of coal which was being mined by the plaintiff and the defendant on the premises respectively leased to them near to the boundary and division line between said lands and that the defendant did then and there at divers other times from then until the commencement of this action unlawfully, carelessly, negligently, knowingly and wilfully open, dig, mine and remove such vein of coal to, through and beyond the boundary and division line between said properties into and under the tract of land so leased to the plaintiff in sundry places and for long distances without the knowledge or consent of the plaintiff or of Cooper-Pocahontas Coal, Company or either of them in writing or otherwise, and that the defendant did mine and remove therefrom 15,000 net tons of bituminous coal which was of the market value of $10.00 per net ton when and as mined and loaded on board cars by the defendant at its tipple at its mine, wherefore this count seeks to recover by way of damages the market value of such 15,000 net tons of coal at the tipple of defendant's mine at the time it was loaded on board cars by the defendant.

The only point urged against these two counts is that plaintiff can not, as assignee, sue in its own name for recovery of the damages alleged to have been done to the premises while they were owned by its assignor, the Cooper-Pocahontas Coal Company. To sustain the counts, counsel for plaintiff refer to chapter 99, section 14, Code, and to *Lumber Company* v. *Railway Company*, 71 W. Va. 741, 77 S. E. 333; *Miller* v. *Starcher*, 86 W. Va. 90, 102 S. E. 809; *N. & W. Ry. Co.* v. *Read*, 87 Va. 185, 12 S. E. 395; and *City of Lynchburg* v. *Mitchell*, 114 Va. 229, 76 S. E. 286. The cases cited are to the effect that at common law all rights of action may be assigned that upon the death of the party would pass to his legal representative, but such rights of action as would not survive are not subject to assignment.

Plaintiff's counsel insist that a claim for damages done to real or personal property is assignable; but counsel for defendant do not deny that proposition. The precise point is whether the action can be maintained in the name of the as-

signee.   At common law the assignee of a contract could not
sue in his own name.   *Glenn* v. *Marbury,* 145 U. S. 499; *Gar-
land* v. *Richeson,* 4 Rand. (Va.) 268; *Brown* v. *Dickenson,* 27
Gratt. (Va.) 693.   But Code, Chapter 99, sec. 14, changed
this rule by providing:

> "The assignee of any bond, note, account, or writing,
> not negotiable, may maintain thereupon any action in
> his own name, without the addition of 'assignee' which
> the original obligee or payee might have brought."

The statute does not create a right of action in the assignee;
it merely provides that it may be brought in his name, whereas
before he was required to bring it in the name of his assignor.
But this right extends only to the matters enumerated, that
is, to actions on "any bond, note, account, or writing, not
negotiable."   A bond or note is a contract.   The word
"account" has no clearly defined legal meaning, but when
applied to transactions between persons it usually means
claims or demands arising out of contract or some fiduciary
relation, and excludes demands arising from tort.   For in-
stance, in *Whitwell* v. *Willard,* 1 Metc. (Mass.) 216, an action
of trespass on the case was brought against a sheriff for non-
feasance, in that he had negligently kept and consumed cer-
tain liquors and other property attached at the suit of plain-
tiff, had neglected to levy upon all the debtor's property,
and had improperly conducted a sale of certain property on
execution.   Under a statute providing that whenever a cause
was at issue and it should appear that the trial would require
an investigation of accounts, or an examination of vouchers by
the jury, the court might appoint an auditor to hear the par-
ties, examine the vouchers and evidence, state the account and
make report thereof to the court, a motion was made by de-
fendant in the case for the appointment of an auditor, which
was opposed by plaintiff.   In holding that the case did not
come within the terms of the statute, Mr. Chief Justice Shaw
said:

> "The primary idea of account, *computatio,* whether
> we look to the proceedings of courts of law or equity,
> is some matter of debit and credit, or demands in the
> nature of debit and credit between parties.   It implies
>                     96 W. Va.

that one is responsible to another for moneys or other things, either on the score of contract or of some fiduciary relation, of a public or private relation, created by law or otherwise."

Our statute says the assignee may in his own name maintain any action which the original "obligee or payee might have brought", clearly referring to a contractual obligation.

We think the term "account" as used in our statute means a demand or demands arising upon contract, express or implied, and does not include a demand arising from tort, although it may be made up of various items. See: *Townsend* v. *Hendricks,* 40 How. Prac. 143; *Dewey* v. *Field,* 13 How. Pr. 437; *Donley* v. *Bailey,* 48 Colo. 373, 110 Pac. 65; *Blue Grass Canning Co's. Assignee* v. *Illinois C. R. Co.,* (Ky.) 119 S. W. 769; *Hunter* v. *Ithaca,* 135 Mich. 281, 97 N. W. 712; *N. & W. Ry. Co.* v. *Read,* 87 Va. 185, 12 S. E. 395; 1 Cyc. 596; *Miller* v. *Starcher,* 86 W. Va. 90, 102 S. E. 809.

It necessarily follows that plaintiff could not recover in this action for damages arising from defendant's tort, occurring between January 1, 1918 and May 1, 1918, the period when its assignor was owner of the property. We do not mean to say that such an action could not be maintained for the use of the plaintiff, but it would have to be brought in the name of its assignor. But this does not render the two counts subject to demurrer. They also aver that defendant from May 1, 1918, and down to the institution of the action continued to trespass upon plaintiff's premises, to mine and remove its coal. For this reason the demurrer thereto was properly overruled.

The remaining five counts, substantially alike, seek to recover from defendant five several statutory penalties of $500.00 each for mining coal within five feet of the division line between plaintiff's and defendant's lands without the consent in writing of plaintiff or its assignor and in violation of section 7, chapter 79, Code. The penalties alleged were incurred between January 1st and May 1st, 1918, while the plaintiff's leasehold was held by Cooper-Pocahontas Coal Company. It was held in *Wilson* v. *Shrader,* 73 W. Va. 105, 79 S. E. 1083, that such penalties are not assignable. To avoid the rule laid down there, plaintiff

avers that during the period of the alleged encroachments
the plaintiff owned all the capital stock of Cooper-Pocahontas
Coal Company, and that as such stockholder it is entitled
to sue for and recover the penalties.  The case of *Moore* v.
*Schoppert*, 22 W. Va. 282, is cited in support of this propo-
sition, but an examination discloses that it is squarely against
it.  That was an action of ejectment brought by a turn-pike
company against Schoppert, who held possession of a house
and lot belonging to the company, under an appointment or
contract with the county court of Jefferson County.  The
county court, by virtue of a statue, had become vested with
all the interest of the State of Virginia in the turnpike com-
pany, a mere stockholder in the company; but it was not the
legal owner of the lot.  Judge SNYDER in the course of his
opinion said:

> "Courts of law recognize a corporation only as one
> body acting in the corporate name.  The individual
> stockholders are not, in contemplation of law, parties
> to contracts made by the association in a corporate capa-
> city, nor have they any legal rights or title to the prop-
> erty vested in the corporation."

It follows that since the plaintiff as a stockholder had no
legal right or title to the coal mining leasehold at the time
the statutory penalties were incurred it could' not maintain
an action at law to recover the penalties.  They could be re-
covered only by the Cooper-Pocahontas Coal Company, the
owner of the property when the encroachments were made.
Nor do we think the statutory penalties could be assigned
by the Cooper-Pocahontas Coal Company to the plaintiff
company, merely because the plaintiff owns all its assignor's
capital stock.  In law the two corporations are distinct en-
tities, and an assignment of the penalties could be no more
made to the plaintiff so as to enable it to maintain an ac-
tion therefor than it could be made to a stranger.  There
are other questions raised, but the one pointed out is sufficient
to sustain the ruling of the circuit court in holding the last
five counts subject to demurrer.

The ruling of the circuit court is therefore affirmed and it
will be so certified.

*Affirmed.*