## In re FUNK.

District Court, W. D. Virginia, at Harrisonburg.

June 13, 1932.

Glenn W. Ruebush, of Harrisonburg, Va., for trustee.

F. S. Tavenner and F. S. Tavenner, Jr., both of Woodstock, Va., for bankrupt.

### The Facts.

McDOWELL, District Judge.

On some date not shown by the record, one Kagey, in an automobile collision, gravely injured A. R. Funk, and also injured Funk's automobile.

On April 11, 1931, Funk instituted an action against Kagey, for damages for his bodily injury and for injury to his automobile, in the circuit court of Shenandoah county, Va.

On May 28, 1931, a written contract of employment was made by Funk and his attorneys, who had brought the said suit. This contract provided that the attorneys should have one-third of any recovery.

On October 27, 1931, a verdict in Funk's favor was returned for $4,500 for his bodily injury, and $250 for the injury to his automobile. On the same day the defendant moved that the verdict be set aside. This motion was taken under advisement.

On November 6, 1931, Funk filed a petition for bankruptcy, and on November 9th was adjudicated a bankrupt. His rights in his then pending action against Kagey were not listed as assets.

On November 17th, no decision on the motion to set aside the verdict having been made, the insurer of Kagey paid $4,750 into court, and the clerk of the court turned this fund over to Funk's attorneys, who still hold it.

On November 20th, the motion to set aside the verdict was withdrawn, and the cause was stricken from the docket.

On February 20, 1932, the referee made the following order:

"At a Court of bankruptcy continued and held in the city of Harrisonburg, in said District, on this 20th day of February, 1932.

"This being the day to which the meeting of February 9th, 1932, was adjourned, the undersigned Referee again sat for the purpose of rendering his decision on the question raised by the Trustee as to the title to the fund of $4750.00 in the hands of Messrs. Tavenner & Tavenner, Attorneys for the bankrupt.

"And the Referee being of opinion that the Trustee is not entitled to the sum of, $4500.00 in the hands of Messrs. Tavenner & Tavenner, Attorneys for the bankrupt, but that said Trustee is entitled to the sum of

$250.00 in the hands of said Attorneys, subject to their lien of one-third thereof, and that said $250.00, less one-third thereof, should be paid to Glenn W. Ruebush, Esq., Trustee of said bankrupt, doth accordingly so adjudge and order."

On February 26, 1932, the trustee filed a petition for review of the said order, alleging as error that he should have been awarded the entire fund of $4,750.

So far as appears both Funk and Kagey are still alive.

#### Opinion.

As I understand, the trustee claims two-thirds of the entire recovery in toto. In respect to the one-third the trustee admits to some extent the attorneys' rights, but contends that the attorneys' rights are subject to prior payment of the costs of administration of Funk's estate in the bankruptcy court.

There is no dispute as to two-thirds of the recovery of $250 for injury to the automobile.

I shall first consider the attorneys' rights in the entire recovery.

The conclusion I have reached makes it unnecessary to consider whether or not the attorneys have waived their right to a plenary suit. It is also unnecessary to consider their possessory lien, acquired after bankruptcy.

The contract between Funk and his attorneys, dated May 28, 1931, is not champertous, Nickels v. Kane's Adm'r, 82 Va. 309; and there has not been the slightest suggestion of fraud.

Section 3429, Code Va. 1930, reads: "Any person having or claiming a right of action sounding in tort, or for liquidated or unliquidated damages on contract, may contract with any attorney at law to prosecute the same, and such attorney shall have a lien upon such cause of action as security for his fees for any services rendered in relation to said cause of action or claim. And when any such contract shall be made, and written notice of the claim of such lien shall be given to the opposite party, his attorney or agent, any settlement or adjustment of such cause of action shall be void against the lien so created, except as proof of liability on such cause of action; but nothing herein contained shall affect the existing law in respect to champertous contracts. (1904, p. 263; 1928, p. 755.)"

■ This statutory lien on Funk's rights in his action was, I believe, intended by the lawmakers to come into existence immediately upon the making of the contract of employment between Funk and his attorneys. If notice had been given Kagey, any compromise made by Funk and Kagey thereafter would have been "void" as against Funk's attorneys' "lien." Such lien therefore must antedate judgment or payment, and it must attach to Funk's action, to his rights in his action, as of the date of the contract. See Lovett v. Moore, 98 Ga. 158, 26 S. E. 498; Lawson v. Mo. & Kansas Tel. Co., 178 Mo. App. 124, 164 S. W. 138; Desaman v. Butler Bros., 114 Minn. 362, 131 N. W. 463; 51 Am. St. Rep. 269–270, note; O'Connor v. St. Louis Transit Co., 198 Mo. 622, 97 S. W. 150, 115 Am. St. Rep. 495, 8 Ann. Cas. 703.

This lien therefore came into existence and attached to Funk's rights in his action more than four months before bankruptcy intervened. I believe section 67d of the Bankruptcy Act (11 USCA § 107 (d) forbids that the trustee should have any rights in the one-third of the fund in question. But in any event the four months' provision in the remaining subsections of section 67 (11 US CA § 107(e, f) require a conclusion that the Bankruptcy Act does not apply.

The referee's ruling as to the rights of the attorneys must be affirmed.

Funk concedes the right of the trustee to two-thirds of the recovery for the injury to his property. See section 70a (6) of the Bankruptcy Act (11 USCA § 110 (a) (6).

■ The only remaining dispute is as to two-thirds of the recovery for the bodily injury inflicted by Kagey.

It should here be said that we have here no concern with other tortious personal injuries, such as slander, libel, deceit, malicious prosecution, false arrest or imprisonment, or alienation of affections. See Dillard v. Collins, 25 Grat. (66 Va.) 343, 346; Norfolk & Western R. Co. v. Read, 87 Va. 185, 187, 12 S. E. 395; Birmingham v. Chesapeake & Ohio Ry. Co., 98 Va. 548, 552, 37 S. E. 17.

The referee's order was based on the theory that Funk's right was at no time prior to bankruptcy "property" within the meaning of section 70a (5) of the Bankruptcy Act (11 USCA § 110 (a) (5). Under that section a right which passes to the trustee must not only be property, but it must be property which the bankrupt could have transferred, or which was subject to levy, prior to the filing of the petition for bankruptcy.

The words "prior to the filing of the petition" include Funk's rights against Kagey

from the date of the injury to November 6, 1931. Between the date of the injury and the institution of his action on April 11th, Funk had a right of action against Kagey, and from April 11th until November 6th, Funk had a pending action. To save unnecessary repetition I shall defer consideration of the effect, if any, of the verdict rendered on October 27th, and ignore it for the time being.

I shall first consider the question of the survivability of Funk's right of action ante litem and of his action (his rights in his action) prior to November 6, 1931.

There is no question but that Funk's right of action, and that his action, would have survived the death of Kagey. See act of 1928 (Acts Va. 1928, p. 1141, c. 446). So far as I know, the only reason for enacting this statute was to provide for survival in case of the death of the tort-feasor either ante litem or pendente lite. And this survival is a survival in the true and full sense of the term. The injured person being alive, his right of action, ante litem, continues, and after he institutes his action, the plaintiff being alive, his action continues, notwithstanding the death of the defendant. We have not here to consider any new action arising by reason of the death of the injured person.

The effect of Funk's death either ante litem or pendente lite must next be considered.

As Funk was alive on February 9, 1932, and then appeared before the referee, the first question is: Should we consider the possibility of his death either ante litem or pendente lite? As we are concerned with the assignability of his right of action ante litem and with the assignability of his rights in his action pendente lite, the fact that he did not die during either period is immaterial and should be ignored. Assignability depends on survivability. And it is necessary to consider and determine whether or not his right of action would have survived his death after the injury and before institution of his action; and whether or not his action (his rights in his action) would have survived his death occurring pendente lite. This is true because the assignability of Funk's rights during the period "prior to filing the petition" must be determined.

The statutes here involved are the Virginia wrongful death statutes: Act of January 14, 1871, c. 29 (Acts 1870-71, p. 27); Code of 1873 (unofficial) c. 145, §§ 7-10, p. 996; Act of March 12, 1878, c. 238 (Acts 1877-78, p. 221; sections 2902-2906, Code 1887; Act of January 29, 1894, c. 88 (Acts 1893-94, p. 83, c. 88); Act of March 7, 1904, c. 64 (Acts 1904, p. 110, c. 64); sections 5786-5790, Code 1919; Act of February 10, 1920, c. 25 (Acts 1920, p. 26, c. 25); Act of Feb. 10, 1920, c. 26 (Acts 1920, p. 27, c. 26); Act of March 25, 1926, c. 507 (Acts 1926, p. 858-59, c. 507); Act of March 26, 1928, c. 446 (Acts 1928, p. 1141, c. 446).

An unofficial compilation of these statutes is in Code 1930 in sections 5786-5790. I have in this case found it advisable to consider the original statutes, rather than this compilation.

It is unnecessary to discuss the foregoing statutes separately or in detail. The rights of the parties in the case at bar are governed by sections 5786-5790, Code of 1919, as amended by the later statutes cited above.

It will be unnecessary to consider in detail the reason for saying that if Funk had died from his injury ante litem *his* right of action would not have survived his death. His right of action could not have been for his wrongful death; while the action given his personal representative would be for wrongful death. The foregoing conclusion is also true, if Funk had died from his injury after the institution of his action and before November 6, 1931. Hence I need discuss only the question of the survivability of his action, if he had died pendente lite from the injury. There is so far as I know no difference between these cases.

The first question I shall attempt to answer correctly is this: If, as was possible, Funk had died pendente lite from the bodily injury inflicted by Kagey, would Funk's action have survived?

Funk's action was for the pain that he had suffered and might continue to suffer, for the loss of his time, and for the expenses he had been put to because of the injury and might yet be put to. This action would not have survived. By force of the wrongful death statutes above cited, on Funk's death, his action would have had sufficient vitality to authorize his personal representative, by amendment, to change the decedent's action into another and a new action for wrongful death, for the benefit of certain kindred, if any, and if none, for the benefit of the decedent's estate.

When an action survives the death of a plaintiff, the decedent's successor in title carries on to a conclusion the same original action. The decedent's successor does not bring a new action; he merely steps into the shoes of the decedent and carries on the original action as if there had been no death.

That Funk's action would not have survived has been, I believe, settled by the opinion in Anderson v. Hygeia Hotel Co., 92 Va. 687, 691, 24 S. E. 269. The law governing in that case was as found in the Code of 1887. The question there was whether or not an action for a tortious bodily injury could be sued for more than one year after the injury. Section 2927, Code 1887, referred to in the opinion, now section 5818, Codes 1919 and 1930 reads: "Every personal action, for which no limitation is otherwise prescribed, shall be brought within five years next after the right to bring the same shall have accrued, if it be for a matter of such nature that in case a party die it can be brought by or against his representative; and, if it be for a matter not of such nature, shall be brought within one year next after the right to bring the same shall have accrued. (Code 1887, § 2927.)"

In that case in order to construe section 2927, it was necessary to construe the wrongful death statutes (sections 2902–2906, Code 1887) and to decide if Anderson's action would have survived his death from the injury sued for pendente lite. It was decided that in such event Anderson's action would not have survived; but that his personal representative would have the right, by amending the declaration, to bring a new action for wrongful death. What was said in the opinion is not a dictum, but a statement of the reasons for the decision. In order to hold, as was held, that the limitation was one year, it was necessary to decide whether or not Anderson's action (not for wrongful death, but for bodily injury, as was Funk's action) would have survived his death from his injury pendente lite. In speaking of the "Virginia act" (page 691 of 92 Va., 24 S. E. 269, 271) sections 2902–2906, it was said: "The language of the act clearly indicates that the Legislature had in view the rule of the common law, and that its purpose in passing the act was to provide for the case of an injured person who had a good cause of action, but died from injuries without having recovered his damages. It intended to withdraw from the wrongdoer the immunity from civil liability which the rule of the common law afforded him, and to provide for the recovery of such damages notwithstanding the death of the injured person. In doing so, however, it plainly did not intend to continue or cause to survive his right of action for the injury, but to substitute for it, and confer upon his personal representative, a new and original right of action."

The Anderson Case construed the wrongful death statutes as found in the Code of 1887. I could here avoid any discussion of the later statutes by merely making the statement that, if Funk had died of his injury between April 11th and November 6th, his action would not have survived. In this respect the statute law has not been changed. However, the accuracy of the foregoing assertions had best be shown.

The act of 1894 (Acts 1893–94, p. 83, c. 88) amending section 2906, Code 1887, provided for the case of the death of a plaintiff pendente lite, if he died from any cause. This provision is new only in so far as it provided for the death of the plaintiff pendente lite not caused by the injury. This statute applies only to tortious bodily injuries, and the limitation on such torts is still one year. Birmingham v. Chesapeake & Ohio Ry. Co., 98 Va. 548, 552, 37 S. E. 17.

This act of 1894 was copied in section 5790, Code 1919, in the act of 1920 (Acts 1920, p. 27, c. 26), and in the act of 1928 (Acts 1928, p. 1141, c. 446).

It is true that if the plaintiff, who has sued for a tortious bodily injury, died pendente lite from some cause other than his injury, his action survives. He has not died a wrongful death. No new action arises; but his same action, for the injury, continues. See article by the late Professor Charles A. Graves, in XV Va. Law Register, 825, 831, which appeared in March, 1910.

But we have no interest in cases where a plaintiff dies pendente lite from some cause other than the injury. There was of course a possibility that between April 11th and November 6th Funk might have died from some cause other than his injury; but there was also a possibility that he might during said interval have died from his injury. It is this possibility, and this only, which may prevent assignability during the said interval. And hence we are interested only to learn if, in a case of the death of the plaintiff, from the injury pendente lite, the law now is the same as under the Code of 1887.

On careful examination of the later statutes, I can find no change in the respect in question. It follows that the ruling made in the Anderson Case, 92 Va. 687, 24 S. E. 269, is as valid and as binding as it has ever been.

It is wholly unnecessary and improper that we should speculate as to the cause of a death which never happened. The possibility that Funk might have died pendente lite from his injury existed from April 11th until

November 6th, and this possibility, because in such event his action would not have survived, negatives assignability of his rights in his action pendente lite.

That it would be politic and wise to expressly give assignability to such an action as Funk's may be conceded. In case of a tortious bodily injury such as might cause death to a very poor person, assignability of his right of action and of his rights in his action might be his salvation. He might be unable to obtain medicines or medical attention, he might be unable to secure food and the other necessities of life for himself and his family, otherwise than by having the power to validly assign the expected fruits of his action. But this question of policy is for the Legislature and not for the courts. By force of the Anderson Case (92 Va. 687, 24 S. E. 269) it is a necessary conclusion that Funk had (except to his attorneys, by section 3429, Code 1930) no power to validly assign the fruits of his action (or any part thereof) pendente lite. And this is true because if he had died pendente lite from his injury, his action would not have survived.

■ The common-law rule that survivability gives assignability may be accepted as sound. It is supported by the weight of authority. But it is equally sound to hold that where the statutes do not give survivability there cannot be assignability. In modern times at least the one unanswerable reason why actions and rights of action for tortious personal injury are not assignable is that they do not survive. And this reason applies here in full force. If Funk had died from his injury, ante litem or pendente lite, neither his right of action nor his action would have survived. Either would merely have given birth to a new action for the sole benefit of his kindred, if any "free from all debts and liabilities of the deceased." Section 5788, Code 1919.

I now reach consideration of the fact that a verdict in Funk's favor was returned on October 27, 1931. The trustee contends that this fact gave Funk's action assignability, as certainly as would have a judgment rendered prior to bankruptcy.

Section 6164, Codes 1919 and 1930, reads, so far as is here material, as follows: "Where a party dies, * * * if such fact occur after verdict, judgment may be entered as if it had not occurred."

This statute in its present wording appeared in volume 2, Code of 1849, p. 656, c. 173, § 1. At that time this statute could not have been intended to apply to tortious bodily injuries causing the death of a plaintiff, because the first wrongful death statute was enacted in 1871. In 1849 the common law was in force, and the wrongful death of the plaintiff pendente lite abated any action of tort for personal injury. The statute of 1849 has now the same purpose and shows the same intent that it showed in 1849.

The only debatable question is as to the intent of section 5790, Code 1919, as amended by the acts of 1920 and 1928. These statutes are later in date than section 6164, they are special, and section 6164 is general.

If, between the verdict, rendered on October 27th, and November 6th, Funk had died from his injury, what is the intent of the present statute law? All of the wrongful death statutes were enacted with presumed knowledge of the death-after-verdict statute of 1849.

In the act of 1878 (Acts 1877–78, c. 238, p. 221) the language was that the action brought by injured person *"shall* be revived." In section 2906, Code 1887, the wording was changed to *"may* be revived." And this wording has been used ever since. See act of 1894, section 5790, Code 1919, act of 1920, and act of 1928.

My belief is that this change from "shall" to "may" is simply one of the almost innumerable instances in which the word "may" is used as meaning "must," and that the change is without significance. In 36 Cyc. 1160, 1161 a thoroughly well-settled rule is stated as follows: "As a general rule the word 'may,' when used in a statute, is permissive only and operates to confer discretion, while the words 'shall' and 'must' are imperative, operating to impose a duty which may be enforced. These words, however, are constantly used in statutes without regard to their literal meaning; and in each case are to be given that effect which is necessary to carry out the intention of the legislature as determined by the ordinary rules of construction. Thus the word 'may' should be construed to be mandatory whenever the public or individuals have a claim de jure that the power conferred should be exercised, or whenever something is directed to be done for the sake of justice or the public good; but never for the purpose of creating a right."

However, it is conceivable that the change was made purposely, and that the intent was to give, perhaps to the personal representative of the decedent, or perhaps to the beneficiaries, an optionary right to revive or not

to revive the injured person's action. But still, assuming an intent to give such option, it remains a fact that in the case at bar after verdict and before judgment or other final settlement, this option might have been so exercised as to revive the pending action and convert it into an action for wrongful death. And this possibility is as fatal to a survival of the injured person's action, and made it as unassignable between October 27th and November 6th, as it was before.

The only satisfactory conclusion I can reach in respect to the two-thirds of the $4,500 recovered for Funk's bodily injury is that he could not, prior to November 6, 1931, have validly assigned the hoped for fruits of his right of action ante litem or of his action.

It is also an unquestioned fact that at no time, from his injury until payment on November 17, 1931, could Funk's right of action or his action been "levied upon and sold under judicial process against him." Section 70a (5) of the Bankruptcy Act (11 USCA § 110 (a) (5). See section 6485, Code Va. 1930.

It follows that it is unnecessary to consider whether or not Funk's rights ante litem or pendente lite could be "property," within the meaning of section 70a (5) of the Bankruptcy Act.

I have intentionally reserved until now discussion of the last sentence in section 5790, Code Va. 1919, the act of 1920, and the act of 1928. This sentence first appeared in the Code of 1919 and is unhappily expressed. To have discussed it earlier would have interrupted the course of the reasoning, and to very little purpose.

The only interest this sentence has is to determine whether or not it can be read as implying that a claim for tortious bodily injury can be assigned either ante litem or pendente lite.

After the Code of 1919 had been adopted the Revisors prepared "Revisors' Notes," and an annotated edition of the Code was issued which includes these notes. In the Revisors' Notes to section 5790 it is said of the last sentence of that section: "The last sentence is [was] intended to meet difficulties that have been suggested with reference to the act of limitations in other actions of tort, and the right to assign such rights of action."

This note, unhappily phrased, was I believe intended merely to advise that section 5790 was not intended to give a 5-year limitation, or to give assignability, to "other actions of tort."

The reference to the limitation of, and the assignability of, other torts, does possibly suggest that the Revisors thought that the limitation of, and the assignability of, the torts dealt with in sections 5786–5790, Code 1919, was different from that of the other torts. But there could have been no such thought. The language of both the last sentence of section 5790 and of the foregoing excerpt from the Revisors' Notes is extremely infelicitous; but there could have been no thought of intent to give assignability to the tort actions and causes of action referred to in said sections, unless the intent was also to give a limitation of five years to the rights of action dealt with in said sections. And yet in section 5787 the limitation is expressly stated to be one year. If there is in the last sentence of section 5790, Code 1919, even a suggestion of an intent to give assignability to rights of action for tortious bodily injury, there is also an equally strong suggestion of an intent to change the period of limitation from one to five years. Neither suggestion is sound unless the other is. And it is certain that section 5790 was not intended to extend the limitation period on rights of action for tortious bodily injuries. The act of 1894 had been so construed (Birmingham v. Chesapeake & Ohio Ry. Co., 98 Va. 548, 552, 37 S. E. 17) in 1900, and that act was copied into section 5790, with knowledge on the part of the Revisors of the decision in the Birmingham Case, and section 5790 "was not intended to change the holding in Birmingham v. C. & O. Ry. Co., supra." See Revisors' Note top of page 2542, Annotated Code 1919.

It seems to me to necessarily follow that the last sentence in section 5790, Code 1919, and the two later statutes does not imply that either rights of action or actions for tortious bodily injury have assignability.

From what has been said it follows that the referee's order must be affirmed in all respects.